BAILEY *v.* RAILROAD COMPANY.

The court, in 22 Wall. 604, when this case was then before it, passed upon the character and effect of certain certificates therein described, which were issued by a railroad company pursuant to a resolution passed by the board of directors, Dec. 19, 1868, declaring that each stockholder was entitled to eighty per cent of his capital stock, the earnings which the company, with a view to increase its traffic, had thitherto expended in constructing and equipping its road and in purchasing property. The court adheres to its former ruling that the certificates were dividends in scrip, within the meaning of sect. 122 of the act of June 30, 1864, c. 173, as amended by the act of July 13, 1866, c. 184; but further holds that the company could show what were its earnings from Sept. 1, 1862, to Dec. 19, 1868, when the income-tax law was in force, as its earnings during any other period were not subject to the tax in question.

ERROR to the Circuit Court of the United States for the Northern District of New York.

The facts are stated in the opinion of the court.

*The Solicitor-General* and *Mr. Richard Crowley* for the plaintiff in error.

*Mr. Joseph H. Choate* and *Mr. Sidney T. Fairchild* for the defendant in error.

MR. JUSTICE MATTHEWS delivered the opinion of the court.

On Dec. 19, 1868, the New York Central Railroad Company, afterwards merged by consolidation into a new corporation, known as the New York Central and Hudson River Railroad Company, the defendant in error, adopted a preamble, resolutions, and certificate, of which the following is a copy: —

"Whereas this company has hitherto expended of its earnings for the purpose of constructing and equipping its road, and in the purchase of real estate and other properties, with a view to the increase of its traffic, moneys equal in amount to eighty per cent of the capital stock of the company; and whereas the several stockholders of the company are entitled to evidence of such expenditure, and to reimbursement of the same at some convenient future period: Now, therefore, —

"*Resolved*, That a certificate, signed by the president and treasurer of this company, be issued to the stockholders severally, de-

claring that such stockholder is entitled to eighty per cent of the amount of the capital stock held by him, payable ratably with the other certificates issued under this resolution, at the option of the company, out of its future earnings, with dividen thereon at the same rates and times as dividends shall be paid on the shares of the capital stock of the company, and that such certificates may be, at the option of the company, convertible into stock of the company whenever the company shall be authorized to increase its capital stock to an amount sufficient for such conversion.

"*Resolved*, That such certificates be delivered to the stockholders of this company at the Union Trust Company, in the city of New York, on the presentation of their several certificates of stock, and that the receipt of the certificate provided for in these resolutions shall be indorsed on the stock certificate."

The certificate issued under this authority is as follows : —

"Under a resolution of the board of directors of this company, passed December 19, 1868, of which the above is a copy, the New York Central Railroad Company hereby certifies that                     , being the holder of             shares of the capital stock of said company, is entitled to             dollars, payable ratably with the other certificates issued under said resolution, at the pleasure of the company, out of its future earnings, with dividends thereon at the same rates and times as dividends shall be paid upon the shares of the capital stock of said company.

"This certificate may be transferred on the books of the company on the surrender of this certificate.

"In witness whereof the said company has caused this certificate to be signed by its president and treasurer, this nineteenth day of December, 1868."

The resolution was carried into effect by an issue of the contemplated certificates to the amount of $23,036,000, — being eighty per cent of its authorized capital of $28,795,000; and the holders of them regularly received dividends equal to those declared and paid upon the capital stock, until the certificates were redeemed at par in the stock of the consolidated corporation, as then authorized by law. This consolidation took place in 1872.

On March 3, 1870, the proper officer of the internal revenue assessed a tax of five per cent upon the amount of these certifi-.

cates, being $1,151,800, and added a penalty of $1,000, under sect. 122 of the act of June 30, 1864, c. 173.    13 Stat. 223, 284.

From this assessment the company appealed successively to the Commissioner of Internal Revenue and the Secretary of the Treasury.    Upon the appeal, a decision was rendered reducing the assessment to the sum of $460,720.

This decision was based upon the ground that the issue of the certificates was a scrip dividend, within the meaning of sect. 122 of the act of 1864; but that as it had been made to appear that the earnings stated in the resolution to have been expended, accrued during the entire period of fifteen years, — from 1853 to 1868, — of which only six years were covered by the income-tax law, which first took effect in September, 1862, the tax should be apportioned *pro rata*, by remitting nine-fifteenths, and assessing it upon $9,214,400, which was assumed to be the amount of earnings during the period when they were subject to the tax.    The assessment of $460,720, with a penalty of five per cent, being $23,036, and interest at the rate of one per cent per month, amounting to $64,153.48, were exacted by the collector, and paid under protest.

To recover back these sums as illegally exacted, the company brought this action against Bailey, the collector of internal revenue, who had collected them.

On the first trial of the case, the court charged that the assessment was wholly illegal and void, the certificates not being a scrip dividend within the meaning of the law, and furnishing no basis for the assessment of any tax whatever, and that consequently the verdict must be for the plaintiff.    There was a verdict accordingly, and the judgment thereon was, upon a writ of error, reversed, and a new trial awarded by this court, in the decision reported in 22 Wall. 604.    The second trial resulted in a verdict and judgment for the company, for $499,432.68.    To reverse the judgment Bailey brought this writ of error.

The principal questions presented arise upon his exceptions to the charge to the jury, and to the refusal to give certain instructions as requested.

The substance of the charge upon the main point was, that

while the certificates constituted a scrip dividend, which jus-
tified the assessment and constituted a complete *prima facie*
defence to the action, nevertheless it was competent for the
plaintiff to show what amount of the earnings of the company,
accruing from Sept. 1, 1862, to Dec. 19, 1868, was represented
by, and included in, the certificates, and that this amount
alone being subject to the tax, the plaintiff was entitled to re-
cover all which in excess thereof had been exacted and paid.
The opposing proposition of the defendant below, the request
to give which as a charge to the jury was refused, was, that the
certificates were conclusive upon the company of the amount
of a scrip dividend subject to taxation without deduction.

The counsel for the plaintiff in error now contend that their
position is established by the decision in 22 Wall. 604, to which
we have already referred.

The actual and precise judgment upon the former writ of
error is, however, completely satisfied by the charge of the Cir-
cuit Court now in question; for the ruling on the first trial,
held to be erroneous, was that the certificates constituted no
basis whatever for taxation as a scrip dividend, and were not
to be admitted or considered even as a *prima facie* defence to the
action.    The reversal at that time did not and could not, upon
the record then presented, anticipate and prejudge the question
now raised, whether those certificates were conclusive as to
the amount of the taxable earnings represented by them.

There is nothing in the opinion of the court then pro-
nounced which, properly understood, requires any conclusion
to the contrary.

In that opinion the nature of these certificates is described,
and their character as scrip dividends defined. It is there
stated that "interest certificates of the kind were issued as
evidence to the stockholders that an equal amount of the earn-
ings of the company beyond current expenses had been ex-
pended for the objects stated in the preamble of the certificates,
and to show that the respective stockholders were entitled to
reimbursement of such expenditure at some convenient future
period, and also to show that the stockholders were entitled to
dividends on the same whenever dividends were paid on the
shares of the capital stock; and that the certificates were to

be paid out of the future earnings of the company, or to be converted, at the option of the company, into stock, if thereafter authorized to exercise that function.

"Such a paper, therefore, by whatever name it may be called, is, upon its face, evidence for each stockholder, to persons with whom he may have dealings, of the amount of the previous net earnings of the company ; that such net earnings had been expended in constructing and equipping the railroad and in the purchase of real estate and other properties appertaining to the same, and that the holders of the certificates will be entitled to dividends whenever dividends are paid upon the capital stock."

These certificates were considered to be a dividend declared, as of profits which had been, at some previous time, earned and converted into capital by an investment in permanent improvements of the railroad, and it was as representing such earnings that they were considered the subject of a tax. Whether those profits had been earned since or before the passage of the act of Congress imposing such a tax does not appear from any recital in the certificates, and they were dealt with by the government itself upon the footing of not being taxable beyond the amount represented by them which had actually been earned after the taking effect of the law. The Treasury Department, as has already been stated, reduced the assessment to six-fifteenths of the face of the certificates, upon the hypothesis that an equal proportion of the whole amount had accrued during each of the fifteen years, since the organization of the company, in 1853 ; and in view of this reduction, Mr. Justice Clifford, in the opinion referred to, added : "Whether or not they are liable for the whole amount is not a question in this case."

The question having thus been left open, it is now contended by the counsel for the plaintiff in error that, by the reason and terms of the law, the certificates are taxable as a scrip dividend upon the full nominal amount thereof.

The one hundred and twenty-second section of the said act of 1864, under which the question arises, is as follows : —

"SECT. 122. *And be it further enacted*, That any railroad, canal, turnpike, canal navigation or slack-water company, indebted for any money for which bonds or other evidence of indebtedness

have been issued, payable in one or more years after date, upon which interest is stipulated to be paid or coupons representing interest, or any such company that may have declared any dividend in scrip or money due or payable to its stockholders as part of the earnings, profits, income, or gains of such company, and all profits of such company carried to the account of any fund or used for construction, shall be subject to and pay a duty of five per centum on the amount of all such interest, or coupons, dividends, or profits whenever the same shall be payable," &c.

It is now urged in argument that, upon the express terms of this section, the certificates in question being a declaration of a dividend as part of the earnings, profits, income, or gains of the company, are taxable upon the amount thereof without deduction; that the policy as well as the language of the act fixes the charge upon the declaration itself when made effectual as between the company and its stockholders, and, for the purposes of taxation, concludes both as to the amount subject to the tax; and that the rule is reasonable as furnishing an obvious standard and the only safe criterion for the assessment of the tax to prevent fraudulent evasions. And consequently that when such a dividend has once been declared, and ascertained to come within the description of the law as a subject of taxation, all the rest follows, and the amount declared is necessarily established as the amount to be taxed.

The soundness of this mode of interpretation, and its application to ordinary cases, may well be admitted; but it cannot be applied to every case without a careful regard to its necessary limitations.

It should be borne in mind, in the first place, that the tax provided for in this section is an annual income tax, and its subject is the interest paid and profits earned by the company for each year, and year by year; and that both by the express letter of the law, and its necessary implications, the tax is not laid on any of these funds which came into being before the time prescribed in the act. And in the ordinary execution of the law, it was contemplated that the funds to be taxed, and the tax imposed upon them, would be concurrent, as to each fiscal year; the scheme of the statute being to levy the tax upon the income for the year ending on the 31st of December next pre-

ceding the assessment; and while it would be altogether admissible to go back, for the purpose of assessing a tax upon a proper fund which had accrued during a previous year and escaped taxation, nevertheless the tax imposed would be for the omitted year. But no tax, in contemplation of the law, accrues upon the fund, except for the year in which the fund itself accrued.

It is also to be remembered that the subject-matter of the tax is the net earnings of the company for the year for which they are taxed, which have been actually realized by it, or which the law assumes to have been. We repeat here what was said by Mr. Justice Miller, speaking for the court in *Railroad Company* v. *Collector*, 100 U. S. 595, 598: "The corporations mentioned in this section are those engaged in furnishing road-ways and water-ways for the transportation of persons and property, and the manifest purpose of the law was to levy the tax on the net earnings of such companies. How were these 'earnings, profits, incomes, or gains' to be most certainly ascertained? In every well-conducted corporation of this character these profits were disposed of in one of four methods; namely, distributed to its stockholders as dividends, used in construction of its roads or canals, paid out for interest on its funded debts, or carried to a reserve or other fund remaining in its hands. Looking to these modes of distribution as the surest evidence of the earnings which Congress intended to tax, and as less liable to evasion than any other, the tax is imposed upon all of them. The books and records of the company are thus made evidence of the profits they have made, and the corporation itself is made responsible for the payment of the tax."

It is true, indeed, that by the terms of the law the amount paid as interest on bonds is charged with a tax as part of the earnings, although there may have been no net earnings out of which to pay it; but the law proceeds upon a presumption which disregards what is merely exceptional. And we have no hesitation in saying, that in reference to a dividend declared as of earnings for the current year and paid as such to stockholders, whether in money or in scrip, no proof would be admissible, for the purpose of avoiding the tax, that no earn-

ings had in fact been made. The law conclusively assumes in such a case that a dividend declared and paid is a dividend earned.

It follows also from this view of the purpose of the law, that a fund taxed in one year, as the profits of a railroad company, used for construction or carried to the account of any fund, has been taxed once for all, and cannot, as part of the earnings of the company, be assessed a second time. The tax for the year is upon the whole amount of the net earnings, distributed and enumerated under the heads pointed out in the statute; and when the tax has been imposed and collected upon them, or any specific part of them, there is no authority to levy any further or additional tax. The profits that this year have been taxed as undivided, and invested in any corporate asset, if in the succeeding year they are embraced in a dividend declared and payable to stockholders, have already borne all the burden imposed by the law, and cannot again be subjected to an assessment for a new tax. There has been a difference of opinion upon the point whether the tax imposed by this section is upon the corporation, on account of its net profits, or upon the income of the stockholder or bondholder; although in the present case it is immaterial which of these alternatives is adopted. We are not aware, however, that it has ever been suggested until now that it might be both in succession, — one year a tax upon the income of the corporation, and the next, upon the same fund as the income of the individual. We do not think this an admissible construction.

It is necessary, in the application of these principles to the circumstances of the present case, to regard the special character of the certificates in question. It will be seen that they do not purport to be a declaration of a dividend as of the earnings of the company during the year in which the tax was assessed, or, indeed, for any particular year or series of years. The recital is that the company " has *hitherto* expended of its earnings, for the purpose of constructing and equipping its road and in the purchase of real estate and other properties, with a view to the increase of its traffic, moneys equal in amount to eighty per cent of the capital stock of the company."

It was quite legitimate for the assessor to treat this as evi-

dence of an amount of earnings which had never been taxed, and make the assessment accordingly. It was equally legitimate for the Secretary of the Treasury, upon proof that the accumulation had been going on from the organization of the company, in 1853, to apportion the amount in equal proportions for each year, and to deduct nine-fifteenths thereof for the years which had elapsed before the taking effect of the act taxing incomes. And it is entirely consistent with the declaration itself to show in point of fact what was the amount of earnings accrued during the period while the income-tax act was in force which had not been assessed for taxation as profits carried to construction or other account. The declaration in the certificates could not be conclusive of anything not inconsistent with it, for an estoppel only prohibits contrary allegations. The proof admitted on the trial below did not contradict the certificates, but only served to rebut a presumption, which, as matter of law, was not conclusive. Its tendency and effect were to exact from the company the full tax upon every dollar of its earnings, which had not previously paid its proper assessment, and which, in any form, was subject to taxation, and to relieve it only to the extent to which otherwise it would have been subjected to the payment of a second tax upon the same fund. This result, and the process by which it was reached, seem to us strictly to conform both to the letter and spirit of the law governing the subject.

This conclusion disposes of the substance of the case, as it sustains the rulings of the Circuit Court upon the main question. There were other exceptions to the charge, and to the refusal of the court to give instructions asked for by the plaintiff in error; but they are either covered by what has already been said, or seem to us not necessary to be specially mentioned. A point was raised as to certain items claimed to be included in the sum for which these certificates were issued, which, in the view we have taken, becomes immaterial; for, as we have decided that the jury could only consider the earnings realized in fact during the operation of the law from 1862 to 1869, it was immaterial what items existing prior to that period were also included in the aggregate sum for which the certificates were issued. Some exception also was taken to some

comment on the part of the circuit judge as to the state of the evidence, but, in our opinion, the question which the jury had to decide was left to them fairly.

*Judgment affirmed.*

MR. JUSTICE HARLAN dissented.