CORPORATION COMMISSION v. RAILROAD CO.

(Filed April 19, 1904).

REMOVAL OF CAUSES—*Courts.*

> The petition in this case for removal to the federal court on account
> of diversity of citizenship and the jurisdictional amount does
> not sufficiently allege the amount involved.

ACTION by the State on the relation of the North Caro-
lina Corporation Commission against the Southern Railway
Company, heard by *Judge C. M. Cooke,* at February Term,
1904, of the Superior Court of GUILFORD County. From
a judgment for the plaintiff the defendant appealed.

*Robert D. Gilmer, Attorney-General,* and *Scales, Taylor
& Scales,* for the plaintiff.
*King & Kimball, F. H. Busbee, R. C. Strong* and *C. B.
Northrup,* for the defendant.

MONTGOMERY, J.   This case is before us upon the appeal
of the defendant from an order made at the February Term,
1904, of the Superior Court of Guilford County, and in
which his Honor overruled a motion of the defendant for
the removal of the action to the United States Circuit Court
for the Western District of North Carolina.   The matter
involved in the proceeding was commenced before the North
Carolina Corporation Commission upon complaint of the
Greensboro Ice and Coal Company, and was instituted for
the purpose of compelling the ·defendant to deliver to the
plaintiff on its side track, at Greensboro, four cars of coal
which had been consigned to the complainant and brought
by the defendant on its line of railway from the State of
Virginia.   It appears from the record in the case and from

135——6

the evidence, as well, that the side track was built by the complainant, at its own expense, with the exception of the iron rails, which the defendant furnished, and that it extended from the defendant's main line about three hundred yards out to the complainant's coal and wood yard. It appeared, further, that while the side track was in process of construction a number of car-loads of coal arrived in Greensboro consigned to the complainants, and that a contention afterwards arose between the parties on account of a charge against the complainants by the defendant in the nature of demurrage—the amount being $146. Upon the refusal of the complainant to pay the amount, or any part of it, the defendant notified, by letter, the complainant that it would on that account not thereafter switch any cars to the side track, but would place them on the public team tracks of the defendant in its yard at Greensboro. There was a further statement in the letter to the effect that defendant found it necessary for the protection of its equipment to tender to the complainants further deliveries of cars upon tracks where they might be under defendant's immediate supervision and control. After a hearing of the matter before the Corporation Commission an order was made by that body as follows:

"This cause coming on to be heard upon complaint and after notice to the defendant and an appearance by them, and it being made to appear to the Commission by the plaintiff that four cars of coal, consigned to the complainant, have been conveyed to Greensboro by the Southern Railway Company, and that said cars are now and have been on the yards of said railway company for several days, and that the agents of said company were requested by said consignees to place said cars for unloading soon after their arrival on a side track built at the expense of and by said complainant and said railway company to facilitate the loading and

unloading of complainant's freights. And that said consignees offered to pay the freight charges due on said cars of coal if the railway company would indicate their willingness to place them as requested by consignees; and it further appearing that the said railway company have refused to place the said cars as requested and insist that they will place said cars only on public team tracks; and it further appearing that said cars of coal can be unloaded by consignees in much less time and at much less expense on the track constructed for that purpose than on public team tracks and at no greater expense to the railway company; and it further appearing that the cause assigned by the Southern Railway for its refusal to place cars as requested by consignees is insufficient, namely: That consignees refused to pay certain demurrage charges which the railway company claims accrued on other cars while on public team tracks of said railway company, and which charges the consignees dispute and allege to be unjust:

"It is, therefore, ordered that the Southern Railway Company, upon the payment of the freight due on said cars of coal, and within forty-eight hours after service of this order, place the four cars of coal consigned to the Greensboro Ice and Coal Company on tracks provided by complainant and defendant for the loading and unloading of the freights of the complainant, to the end that the same may be unloaded and the complainant receive their freights.

"FRANKLIN McNEILL,
"*Chairman N. C. Corporation Commission.*"

Exceptions were filed to that order by the defendant, and on November 12, 1903, they were heard by the Corporation Commission at Greensboro. They were as follows:

"*To the Honorable the North Carolina Corporation Commission, Raleigh, North Carolina:*

"The Southeren Railway Company, a corporation existing under and by virtue of the laws of the State of Virginia, filed with your honorable board its exceptions to the particulars that it objects to your order, or judgment, of date October 31, 1903, relative to the placing of the four cars of coal involved upon the private track of the Greensboro Ice and Coal Company, in Greensboro, North Carolina, and states the grounds thereof, as follows:

"*Exception No. 1.*—That the side track of the Greensboro Ice and Coal Company is the private property of that company, with the exception of the rails, and is under the control of that company and built by that company for its own use and convenience, and not for the use or convenience of the Southern Railway Company; that to make the said side track more useful and profitable to said Coal and Ice Company, that company caused the track to be gradually raised so that cars of coal could be dumped into bins made under said track with the least inconvenience to the said Coal and Ice Company; that during the construction of this work, and with no default on the part of the Southern Railway Company, certain demurrage charges accrued, under order No. 36, Rules of your honorable board, on five car-loads of coal and on eight car-loads of wood, amounting in all to one hundred and forty-six dollars ($146.00), and under promise to pay said amount, upon which the Southern Railway Company relied and acted, the said Coal and Ice Company induced the Southern Railway Company to place the said car-loads of coal and wood upon the said private side track, and said Coal and Ice Company have since refused to pay said demurrage charges, though several times requested and demanded by the Southern Railway Company to do so; that the Southern Railway Company thereupon refused and still

refuses to place any more cars of freight upon the private side track of the Coal and Ice Company, and to extend them credit or part with their legal lien upon the four car-loads of coal ordered placed by your honorable board, or with their legal lien upon any goods, wares or merchandise, until all freight, demurrage, or other charges have been fully paid, which the said railway company submits it has the right to do.

"*Exception 2.*—That the Southern Railway Company is ready and willing, and has repeatedly offered to place said four cars of coal and other cars of merchandise accessible on its public team or delivery track in the city of Greensboro, N. C., and has placed said cars accessible as aforesaid, but the said Coal and Ice Company refuses to so receive them. Southern Railway Company contends and insists that the said Coal and Ice Company has not any superior right to the delivery of their goods, wares and merchandise, and that it is justified in refusing to place cars of the Coal and Ice Company upon its private siding or tracks, and thus part with their property.

"*Exception 3.*—That the said order or judgment herein excepted to is contrary to the Fourteenth Amendment to the Constitution of the United States, in that it deprives the Southern Railway Company of its property without due process of law, and denies to it the equal protection of the law for that,

"*a.* It requires the railway company to part with the lien given it by law upon all goods, wares and merchandise until the freight and demurrage and all other lawful charges are paid.

"*b.* It requires the Southern Railway Company to give or extend credit to the said Coal and Ice Company which it is unwilling to do.

"*c.* It is an adjudication of your honorable board without

complaint and answer required by your own rules of practice and without legal or any sufficient evidence before you necessary for the said judgment to be entered, and upon which these exceptions are based.

"*Exception 4.*—That the said order or judgment herein excepted to is contrary and is repugnant to the Constitution of the United States as an attempted regulation of interstate commerce, and to a certain of act of Congress known as the Interstate Commerce Act, in that the four car-loads of coal, the subject of said order or judgment, were shipped to said Coal and Ice Company at Greensboro, from points in the State of Tennessee and the State of Virginia, and is an interference by your honorable board with interstate shipments.

"Whereupon the Southern Railway Company prays that said order herein excepted to be reviewed and vacated.

"This November 2, 1903."

From the overruling of the exceptions, the defendant appealed to the Superior Court of Guilford County. On the first day of the term of that Court to which the appeal was taken the defendant lodged its motion for the removal of the cause to the Circuit Court. The petition duly verified and signed, was as follows:

"*To the Honorable the Superior Court of the County of Guilford, State of North Carolina:*

"Your petitioner, Southern Railway Company, respectfully showeth that it is the defendant in the above-entitled suit or proceeding, which was begun against it before the North Carolina Corporation Commission, and was transferred by appeal to the Superior Court of Guilford County, North Carolina, and that an informal paper in the nature of a complaint has been filed·in the said action, and that

the defendant, your petitioner, files this petition at or before the time when it is obliged to answer or demur to the complaint in the said Superior Court, and at its first opportunity to make such motion.

"That the matter in controversy therein exceeds, exclusive of interest and costs, the sum or value of two thousand dollars ($2,000).

"That the said suit or proceeding is of a civil nature, and is a proceeding to assert and enforce the right of the Greensboro Ice and Coal Company to have the North Carolina Corporation Commission order and direct your petitioner to deliver certain interstate shipments to the plaintiff, Greensboro Ice and Coal Company, and the matter actually in controversy involving the right of the defendant to manage its large interstate commerce without any interference on the part of the plaintiffs, largely exceeds the sum or value of two thousand dollars ($2,000).

"Your petitioner further states that in the said above-mentioned suit or proceeding there is a controversy which is wholly between citizens of different States, and which can be fully determined as between them, to-wit, a controversy between your petitioner, which was at the commencement of this action, and still is, a citizen and resident of the State of Virginia, and is not and was not at the time this action began, a citizen and resident of North Carolina, and that the defendant is a corporation originally created by and under the laws of the State of Virginia, and was at the commencement of this suit, and still is, such; and the said North Carolina Corporation Commissioners and the Greensboro Ice and Coal Company, whom your petitioner avers were, at the commencement of this suit or proceeding, and still are, citizens of the State of North Carolina, some of whom, to-wit, Franklin McNeill and Eugene C. Beddingfield, are residents of the Eastern District thereof, and Greensboro Ice and Coal

Company and Samuel L. Rogers are citizens and residents of the Western District, and that the plaintiff, Greensboro Ice and Coal Company, is a corporation originally created by and under the laws of the State of North Carolina, and was at the commencement of this suit, and still is, such; and that all of the said defendants and your petitioner are actually interested in the said controversy.

"And your petitioner offers herewith a bond with good and sufficient surety in the sum of five hundred ($500) dollars for its entering in the Circuit Court of the United States for the Western District of North Carolina, on the first day of its next session, a copy of the record in this action, and for paying all costs which may be awarded by the said Circuit Court if said Court shall hold that this action was wrongfully or improperly removed thereto, and for entering a special bail if such be required.

"And your petitioner prays this Court to proceed no further herein, except to make an order of removal and to accept the said surety and bond, and to cause the record herein to be removed into said Circuit Court of the United States in and for the Western District of North Carolina."

It appears to us from the record in the cause, including the petition, that his Honor was right in refusing a motion to remove the cause, although he gave a wrong reason for the judgment, as we shall hereafter point out. We are aware that there are decisions of the Supreme Court of the United States in which it is held that issues of fact cannot be made in the State Courts upon the petition for removal, and that such issues must be tried in the Circuit Court; and we are not in the least disposed to question the correctness of those decisions. We know, however, that in those same decisions it was held that the State Court could determine for itself, on the face of the record, whether a removal had been

effected. In *Stone v. South Carolina*, 117 U. S., 430, the Court said: "A State Court is not bound to surrender its jurisdiction on a petition for removal until a case has been made, which on its face shows that the petitioner has a right to the transfer. *Yullee v. Vose*, 99 U. S., 539, 545; Removal Cases, 100 U. S., 457." It is undoubtedly true, as was said in *Steamship Co. v. Tugman*, 106 U. S., 110, that upon the filing of the petition and bond, the suit being removable under the statute—the jurisdiction of the State Court absolutely ceases and that of the Circuit Court of the United States immediately attaches, but still, as the right of removal is statutory, before a party can avail himself of it he must show upon the record that his is a case which comes within the provision of the statute. As was said in *Insurance Co. v. Pechner*, 95 U. S., 183, "his petition for removal when filed becomes a part of the record in the cause. It should state facts which, when taken in connection with such as already appear, entitle him to the transfer. If he fails in this he has not, in law, shown to the Court that it cannot 'proceed further with the suit.' Having once acquired jurisdiction the Court may proceed until it has been judicially informed that its power over the case has been suspended. The mere filing of a petition for the removal of a suit which is not removable does not work a transfer. To accomplish this the suit must be one that may be removed and the petition must show a right in the petitioner to demand a removal." The record in this case, if we leave out for the present the petition, shows that the object of the proceeding, technically and literally, was to compel the defendant to place upon the side track, leading to the complainant's coal yards, the four car-loads of coal which the defendant was refusing to deliver under an alleged contract with the complainant at the time the complaint was made before the Corporation Commission. But suppose we give a broader significance to the complaint

and order made therein, as to the effect of the order upon the defendant in thereafter being compelled by repeated orders to deliver each and all car-loads of coal that the defendant company might bring upon their line of railway into Greensboro, consigned to the complainant, is not the petition of the defendant for removal fatally defective in that it does not put a valuation upon the advantage which the plaintiff might derive from such a construction of his complaint and the order of the Corporation Commissioners? Suppose it be admitted that this proceeding when begun before the Corporation Commissioners was in the nature of a suit in equity and that the amount in controversy should be measured by the value of the object to be gained by the plaintiff, is there anything in the petition going to show that such advantage or benefit to the plaintiff was worth $2,000? In such equity cases as we have referred to "it is the value of the whole object of the suit to the complainant which determines the amount in controversy," as was said in *Railway Company v. McConnell,* 82 U. S., 65. The plaintiff in his complaint put no valuation upon what might be the effect of the delivery to it on its side track either of the four particular cars, or of the delivery of all cars that might in the future be consigned to him over the defendant's railroad; and the defendant in its petition makes no statement as to the "amount in controversy" in either aspect of the plaintiff's benefit and advantage.

It appears from a careful reading of the petition that the statement as to the amount in controversy was based not upon the amount that the object of the action might be to the plaintiff, but to the inconvenience and loss of the defendant because of the interference of the Corporation Commission with the right of the defendant to manage its large interstate commerce. The exact language of the petition on this point is as follows: "That the said suit or proceeding

CORPORATION COMMISSION *v.* RAILROAD CO.

is of a civil nature, and is a proceeding to assert and enforce the right of the Greensboro Ice and Coal Company to have the North Carolina Corporation Commission order and direct your petitioner to deliver certain interstate shipments to the plaintiff, Greensboro Ice and Coal Company, and the matter actually in controversy involving the right of the defendant to manage its large interstate commerce without any interference on the part of the plaintiffs, largely exceeds the sum or value of $2,000." That statement as to the matter in controversy is simply a conclusion of law, and an erroneous one in our opinion, from the facts as they appear in the record and even in the petition. The matter in controversy was not an attempt on the part of the complainant to interfere with the general business of the defendant, the "large interstate commerce" of the defendant, but was only an order affecting the delivery of certain car-loads of coal consigned to the complainant, and, as we have said, there was no valuation by the defendant of that benefit secured to the plaintiff by the order.

Affirmed.