GULF OIL CORP. v. LEWELLYN, Internal Revenue Collector.

(District Court, W. D. Pennsylvania. May Term, 1916.)

No. 1592.

INTERNAL REVENUE ☞9—INCOME TAX—STOCK DIVIDENDS—ACCUMULATED EARNINGS—"NET INCOME ARISING OR ACCRUING IN THE PRECEDING CALENDAR YEAR."

Plaintiff, as a holding corporation, owned all of the stock of subsidiary corporations, except sufficient to qualify their directors. Such subsidiaries were associated in a common enterprise, the earnings of which had been for a number of years prior to January 1, 1913, used in common by the several subsidiary companies in the acquisition of property and the carrying on of the business, with the result that there was indebtedness between them, as shown by their books. About March 1, 1913, such accumulated earnings were taken over by plaintiff in the form of dividends declared by the several subsidiaries, equal in amount to their respective interests therein. Each was charged on plaintiff's books with the amount of the dividends, and its indebtedness to the other subsidiaries, if any, became due to plaintiff. *Held,* that such dividends did not constitute "net income arising or accruing * * * in the preceding calendar year" to plaintiff, within the meaning of Income Tax Act Oct. 3, 1913, c. 16, § 2A (1), 38 Stat. 166, which became effective from March 1, 1913, and were not subject to tax thereunder, but were a distribution of accumulated earnings arising through a period of years, the equitable ownership of which was vested in plaintiff as owner of the stock prior to January 1, 1913.

[Ed. Note.—For other cases, see Internal Revenue, Cent. Dig. §§ 13–28.]

In Equity. Suit by the Gulf Oil Corporation against C. G. Lewellyn, Collector of Internal Revenue for the Twenty-Third District of Pennsylvania. Judgment for plaintiff.

Reed, Smith, Shaw & Beal, of Pittsburgh, Pa., for plaintiff.

E. Lowry Humes, U. S. Dist. Atty., and B. B. McGinnis, Asst. U. S. Dist. Atty., both of Pittsburgh, Pa., for defendant.

ORR, District Judge. The plaintiff has brought this suit to recover from the defendant the sum of $114,244.40, with interest from February 17, 1915, the payment of which was illegally exacted of the plaintiff by reason of a wrong construction of certain provisions of Act Cong. Oct. 3, 1913, c. 16, 38 Stat. 114–166, commonly called the "Income Tax Law of 1913." In pursuance of a stipulation in writing, the case has been tried by the court without a jury. From the evidence produced at the trial, the court has found the following facts:

First. The Gulf Oil Corporation is a corporation duly organized under the laws of the state of New Jersey. C. G. Lewellyn is the collector of internal revenue for the Twenty-Third district of Pennsylvania, be-

ing duly commissioned as such pursuant to the laws of the United States of America.

Second. The Gulf Oil Corporation, on the 14th day of February, 1914, in compliance with the provisions of the act of Congress of October 3, 1913, made a return of its annual net income for the 12 months ending December 31, 1913, as required by said act. In making said return the Gulf Oil Corporation certified that it had not included in the statement of gross income for the year 1913 certain dividends, amounting to $11,424,440, received by it from subsidiary companies out of earnings and surplus of said subsidiary companies accrued prior to January 1, 1913.

Third. In said return the Gulf Oil Corporation showed net income for the 12 months ending December 31, 1913, of $886,250.44, but under date of May 1, 1914, the said C. G. Lewellyn, collector, mailed to said corporation notice of an assessment of tax thereon amounting to $9,072.56. A claim for abatement of this overcharge, amounting to $210.06, was filed with the collector June 9, 1914, and on June 30, 1914, the Gulf Oil Corporation paid to the said C. G. Lewellyn, collector, the sum of $8,862.50, being the amount of said assessment, less the $210.06 for which abatement was claimed. Said claim for abatement having been disallowed, said Gulf Oil Corporation, on the 5th day of November, 1914, paid the said collector the additional sum of $210.06, with interest amounting to $6.30, making a total payment of $216.36.

Fourth. On the 30th day of December, 1914, the said C. G. Lewellyn, collector, acting under instructions from the Commissioner of Internal Revenue at Washington, D. C., mailed notice and demand for tax assessment against the Gulf Oil Corporation for the year ending December 31, 1913, amounting to $114,034.34. In fact, this additional assessment amounted to $114,244.40, being the 1 per cent. upon the entire amount of the dividends received by the Gulf Oil Corporation from subsidiary companies out of surplus accrued to such subsidiaries prior to January 1, 1913, and payable to the Gulf Oil Corporation prior to March 1, 1913, and said additional assessment was based solely on said dividends. In making the assessment, however, the Commissioner of Internal Revenue reconsidered and allowed the previous claim for abatement of $210.06, erroneously assessed against the corporation in the original assessment, and credited the same as having been paid upon the assessment of December 30, 1914, leaving the net balance of such assessment $114,034.34, as stated.

Fifth. The notice and demand of the said C. G. Lewellyn, collector, for the payment of this additional tax, recited that if the tax is not paid on or before January 8, 1915, it would be the duty of the collector to collect said tax, together with 5 per cent. additional and interest at the rate of 1 per cent. per month until paid.

Sixth. That subsequently the plaintiff filed with the defendant for presentation to the Commissioner of Internal Revenue a claim for the abatement of said income tax amounting to $114,034.34, a copy of which claim is attached to and made a part of plaintiff's statement as Exhibit A. That after an examination of said claim for abatement the Commissioner of Internal Revenue rejected the same.

Seventh. On February 17, 1915, the said Gulf Oil Corporation paid

to the said C. G. Lewellyn, collector, said additional income taxes assessed for the period ending December 31, 1913, in the sum of $114,-034.34, and at the same time filed with said C. G. Lewellyn a written protest, a copy of which protest is attached to and made a part of plaintiff's statement as Exhibit B.

Eighth. That subsequently the plaintiff filed with the said C. G. Lewellyn for presentation to the Commissioner of Internal Revenue a claim for the refund of the net amount of the assessment of said income tax, to wit, $114,034.34, and also the amount of the credit allowed thereon of $210.06, representing an overassessment against the corporation on the basis of its return as originally filed; the two amounts constituting the entire amount of the additional assessment in the sum of $114,244.40. A copy of the said claim for refund is attached to and made a part of plaintiff's statement as Exhibit C.

Ninth. That after consideration of said claim for refund, the Commissioner of Internal Revenue rejected the same, and the said C. G. Lewellyn was instructed to notify the Gulf Oil Corporation, and on or about April 13, 1915, did so notify said corporation, that said claim was rejected, a copy of which notice is attached to and made a part of plaintiff's statement as Exhibit D.

Tenth. The plaintiff is a holding company, and continuously since its organization in February, 1907, it has been the owner of all of the capital stock of the J. M. Guffey Petroleum Company, the Gulf Pipe Line Company, the Gulf Pipe Line Company of Oklahoma, and for many years has been the owner of all of the capital stock of the Indiana Oil & Gas Company and the Gulf Commissary Company, except, in the case of each company, of directors' qualifying shares, and was the owner of said shares during all of the period in which the earnings have accumulated out of which the dividends in question in this case were declared and paid. That with the exception of the Indiana Oil & Gas Company and the Gulf Commissary Company, and a dividend of the J. M. Guffey Petroleum Company hereafter referred to, no dividends were paid by any of the above-named subsidiary companies prior to December 31, 1912. All of the earnings of said companies prior to said date were either invested as earned in the extension and development of the properties and business of the companies mentioned, or allowed to accumulate in the treasuries of such companies, respectively and all of the said earnings were actually used and required in carrying on the business of the subsidiary companies. In January, 1913, the officers of the Gulf Oil Corporation, plaintiff, decided that the accumulated earnings and surpluses of these subsidiary companies should be taken over by the plaintiff company in the form of dividends, and accordingly—

Eleventh. On February 7, 1913, the J. M. Guffey Petroleum Company declared and authorized, out of its accumulated surplus earned prior to January 1, 1913, the immediate payment of a dividend, of which the Gulf Oil Corporation received $3,749,750. Payment of said dividend was made April 11, 1913.

Twelfth. On February 7, 1913, the Gulf Pipe Line Company declared and authorized, out of its accumulated surplus earned prior to January 1, 1913, the immediate payment of a dividend, of which the Gulf

Oil Corporation received $4,724,055. Payment of said dividend was made April 11, 1913.

Thirteenth. On February 7, 1913, the Gulf Pipe Line Company of Oklahoma declared and authorized, out of its accumulated surplus earned prior to January 1, 1913, the immediate payment of a dividend, of which the Gulf Oil Corporation received $2,597,660. Payment of said dividend was made April 11, 1913.

Fourteenth. On January 8, 1913, the Indiana Oil & Gas Company declared and authorized, out of its accumulated surplus earned prior to January 1, 1913, the immediate payment of a dividend, of which the Gulf Oil Corporation received $338,000, and on February 24, 1913, declared and authorized the immediate payment of a dividend, of which the Gulf Oil Corporation received $10,000. Payment of the dividend declared January 8, 1913, was made on that day, and payment of the dividend declared February 24, 1913, was made on February 25, 1913.

Fifteenth. On December 17, 1912, the Gulf Commissary Company declared and authorized, out of its accumulated surplus earned prior to December 17, 1912, the payment of a dividend, of which the Gulf Oil Corporation received $4,975. Payment of said dividend was not made until January 4, 1913.

Sixteenth. Payment of said dividends by the J. M. Guffey Petroleum Company, the Gulf Pipe Line Company, and the Gulf Pipe Line Company of Oklahoma was made as follows: The several companies mentioned, together with certain other companies, constituted a single enterprise carried on by the plaintiff, that enterprise consisting in a general way of the production and purchase of crude oil, the transportation of oil, and the refining and marketing thereof. During the period in question the business of producing and purchasing oil was carried on principally in the state of Oklahoma, where also the oil was gathered and stored, the transportation of oil by pipe lines from points in the state of Oklahoma and in Texas to the Gulf of Mexico, where the company owned refineries in which the refined products were manufactured. The marketing of these products was carried on over a large part of the United States and in foreign countries, and for the purpose of shipping such refined products the company owned and operated its own fleet of carrying vessels. At the time of the declaration of the dividends before referred to all of the earnings of the subsidiary companies had been retained in those companies, treating the subsidiary companies collectively, although for the purposes of the enterprise as a whole it was necessary that the funds or credit of one subsidiary be loaned to and used by another. As a result of this, at the time of the declaration of said dividends, there existed among the subsidiary companies considerable indebtedness, evidenced by book accounts; such indebtedness arising almost entirely through transactions between such companies in the purchase and sale of oil or property. All of these funds were either invested in properties or actually required in the carrying on of the business of the subsidiary companies, so that the subsidiary companies were without moneys with which to make payment of this intercompany indebtedness. For the purpose of clearing the transaction the matter was consummated on

the same day, to wit, April 11, 1913, and in this way: The Gulf Oil Corporation took over upon its books the amount of the dividends before mentioned (other than the Indiana Oil & Gas Company and the Gulf Commissary Company, which it had already received), and at the same time set up upon its books accounts receivable owing to it by various subsidiaries aggregating the amount of the dividends so received. Upon the books of the subsidiary companies entries showing the same facts were made, and all of these entries were made upon vouchers passed between the parties to the transactions. As a result, the subsidiary companies collectively, after the payment of this dividend, owed substantially the same amount as prior thereto had been owing to some of the subsidiaries by other subsidiaries, but such indebtedness was shifted so that it was owing entirely to the Gulf Oil Corporation, and the Gulf Oil Corporation, after the payment of the dividends, had no property or assets which prior thereto was not represented in the shares of stock of the subsidiary companies owned by it, but it had upon its books accounts receivable of subsidiary companies which, together with the shares of stock of the various subsidiary companies owned by it, represented the same property and assets as was represented by the shares of stock alone prior to the declaration and payment of said dividends.

Seventeenth. The only dividend declared by the J. M. Guffey Petroleum Company prior to January 1, 1913, was a dividend of $2,024,-865 declared and paid in the year 1912; but the moneys out of which that dividend was paid arose out of the sale by the J. M. Guffey Petroleum Company to the Gulf Refining Company (another subsidiary of the plaintiff company) of certain ships owned by it, and was merely the carrying out of a change of ownership of the property from one subsidiary to another.

Eighteenth. That the said J. M. Guffey Petroleum Company, Gulf Pipe Line Company, Gulf Pipe Line Company of Oklahoma, Indiana Oil & Gas Company, and Gulf Commissary Company were all corporations subject to the payment of the excise tax imposed by the act of Congress of August 5, 1909 (36 Stat. 11–112), and that all of said companies had in fact paid all of the taxes imposed upon them under the provisions of the said act, including such taxes on the earnings from which said dividends were declared.

## Discussion.

The payment of all taxes thitherto required of the several subsidiaries by acts of Congress, and the full disclosure by the plaintiff in its return for 1913 of the dividends from its subsidiaries, negative any suggestion that the conduct of the plaintiff has been in any way evasive or otherwise improper. The plaintiff has merely asserted its legal rights. Its right to bring this action is clear, because it has performed all the conditions precedent to suit which the law requires. The chief matter in controversy between the parties is whether the dividends declared by the subsidiaries are within the provisions of the Income Tax Law (Act Oct. 5, 1913, 38 Stat. 114–172, § 2G). Referring to said law (Id. p. 166, § 2A), we find in subdivision 1 a provision for a tax of 1 per centum "upon the entire net income arising or accruing from

all sources in the preceding calendar year to every citizen of the United States," and in subdivision 2, a provision for a tax in addition to the foregoing, which is called the "normal income tax," upon the net income of every individual when the same shall exceed the amounts therein specified.

Turning to section 2G of the act (Id. p. 172), we find the following language:

"That the normal tax hereinbefore imposed upon individuals likewise shall be levied, assessed, and paid annually upon the entire net income arising or accruing from all sources during the preceding calendar year to every corporation," etc.,

—with certain exclusions not necessary to be considered in the present case, because the plaintiff is not within the exclusions or exceptions mentioned. The question therefore is: Are the dividends, which are the subject of the assessment in controversy in this case, being, as it appears, but distributions of accumulations of profits extending over a long period of years, income within the meaning of the said Income Tax Law? The defendant contends that, so far as the plaintiff corporation is concerned, the distribution of such profits and earnings must be considered as part of the net income arising or accruing to it during the year 1913. He urges that the plaintiff corporation had no interest in or title to any of the earnings of the subsidiaries until after such dividends were declared by them, and has cited many authorities holding that shareholders in a corporation do not have any enforceable title to profits of corporations until dividends are actually declared by the directors of such corporations. It is unnecessary to consider these cases in detail, because they do not control the question now before the court. It is preferable to adopt the language of Mr. Justice Clifford in Collector v. Hubbard, 79 U. S. 1–18, 20 L. Ed. 272, a case not otherwise helpful:

"Decided cases are referred to, in which it is held that a stockholder has no title for certain purposes to the earnings, net or otherwise, of a railroad prior to the dividend being declared, and it cannot be doubted that those decisions are correct as applied to the respective subject-matters involved in the controversies. Grant all that, still it is true that the owner of a share of stock in a corporation holds the share with all its incidents, and that among those incidents is the right to receive all future dividends; that is, his proportional share of all profits not then divided. Profits are incident to the share to which the owner at once becomes entitled, provided he remains a member of the corporation until a dividend is made. Regarded as an incident to the shares, undivided profits are property of the shareholder, and as such are the proper subject of sale, gift, or devise. Undivided profits invested in real estate, machinery, or raw material for the purpose of being manufactured are investments in which the stockholders are interested, and when such profits are actually appropriated to the payment of the debts of the corporation they serve to increase the market value of the shares, whether held by the original subscribers or by assignees."

While decisions bearing upon the right to stock dividends declared by corporations in distribution of accumulated earnings may not be specially helpful, we find very careful consideration of such questions in Gibbons v. Mahon, 136 U. S. 549, on page 558, 10 Sup. Ct. 1057, on page 1058, 34 L. Ed. 525, where the following language by Mr. Justice Gray is found:

"Reserved and accumulated earnings, so long as they are held and invested by the corporation, being part of its corporate property, it follows that the interest therein, represented by each share, is capital, and not income, of that share, as between the tenant for life and the remainderman, legal or equitable, thereof."

The case of Bailey v. Railroad Co., 106 U. S. 109, 1 Sup. Ct. 62, 27 L. Ed. 81, is of value in the consideration of the question now before the court. That case, in the lower court, was a proceeding by the railroad company to recover from Bailey, a collector of internal revenue, moneys claimed by the railroad company to be illegally exacted as income tax within the meaning of section 122 of an act of Congress passed June 30, 1864 (13 Stat. 223–284, c. 173). The act provided that certain corporations should be subject to and pay a tax on the amount of interest, etc., and upon "any dividend in scrip, or money due or payable to its stockholders as part of the earnings, profits, income, or gain of such company, and all profits of such company carried to the account of any fund, or used for construction." The government had undertaken to assess an income tax under that act of 1864 upon a scrip dividend made in 1868, distributing earnings which had accrued through the period from 1853 to 1868. The court held that there was no authority for the imposition of the tax upon so much of the earnings as accrued prior to 1862, the date from which the tax took effect. It was argued on behalf of the plaintiff in error, representing the government, that by the express terms of the act, inasmuch as the certificates issued to the stockholders evidencing their proportions in the scrip dividend, "being a declaration of a dividend as part of the earnings, profits, income, or gains of the company, are taxable upon the amount thereof without deduction, that the policy as well as the language of the act fixes the charge upon the declaration itself when made effectual as between the company and its stockholders, and, for the purposes of taxation, concludes both as to the amount subject to the tax, and that the rule is reasonable as furnishing an obvious standard and the only safe criterion for the assessment of the tax to prevent fraudulent evasions, and consequently that when such a dividend has once been declared, and ascertained to come within the description of the law as a subject of taxation, all the rest follows, and the amount declared is necessarily established as the amount to be taxed." The foregoing quotation is the statement of the contention on the part of the government as it appears in the opinion of Mr. Justice Matthews (106 U. S. 114, 1 Sup. Ct. 67, 27 L. Ed. 81). The learned justice proceeds as follows:

"The soundness of this mode of interpretation, and its application to ordinary cases, may well be admitted; but it cannot be applied to every case without a careful regard to its necessary limitations. It should be borne in mind, in the first place, that the tax provided for in this section is an annual income tax, and its subject is the interest paid and profits earned by the company for each year, and year by year, and that both by the express letter of the law, and its necessary implications, the tax is not laid on any of these funds which came into being before the time prescribed in the act. And in the ordinary execution of the law, it was contemplated that the funds to be taxed, and the tax imposed upon them, would be concurrent, as to each fiscal year, the scheme of the statute being to levy the tax upon the income for the year ending on the 31st of December next preceding the assessment, and while it

would be altogether admissible to go back, for the purpose of assessing a tax upon a proper fund which had accrued during a previous year and escaped taxation, nevertheless the tax imposed would be for the omitted year. But no tax, in contemplation of the law, accrues upon the fund, except for the year in which the fund itself accrued."

The foregoing seems to be a direct authority in support of the contention of the plaintiff in the present case, for the language of the act of 1913 is no clearer in showing an intent of the lawmakers to tax earnings accrued prior to the time they were subjected to the operation of the act than was the language of the act of 1864. The argument that there should be a different construction of the act of 1913 from that given to the act of 1864 is weakened by the fact that, at the time the earnings in the present case accrued, the authority given to Congress by the Sixteenth Amendment was wanting. It seems to be perfectly clear that the advances in the value of property during a series of years can in no proper sense be considered gains, profits, or income of any one particular year of the series, although the entire amount of the advance may be at one time turned into money by the sale of the property. See Gray v. Darlington, 82 U. S. 63, 21 L. Ed. 45, and Gauley Mountain Coal Co. v. Hays, 230 Fed. 110, 144 C. C. A. 408.

The Income Tax Law of 1913 has already received the consideration of the federal courts. Indeed, the very contention of the plaintiff in this case has been supported in the decisions by the Circuit Court of Appeals of the Eighth Circuit in Lynch v. Turrish, 236 Fed. 653, 149 C. C. A. 649, and Lynch v. Hornby, 236 Fed. 661, 149 C. C. A. 657. Nothing could add to the reasoning or strengthen the conclusions reached by that court. A mere statement from the syllabus of the first case is sufficient for present purposes:

"The enhanced value of property of a corporation which accrues from the gradual increase in its value during a series of years prior to the effective date of an income tax law, although divided or distributed by dividends or otherwise, subsequent to that date, does not become 'income, gains, or profits' taxable under such an act, but is rather an 'increase of capital assets.'"

The specific facts in each of those cases are not specially material. The complaints of the plaintiffs therein were generally the same as the complaint of the plaintiff in the present case. Each had been assessed and compelled to pay a tax levied upon a distribution of assets, because of the mistaken view of the collector of internal revenue that such distribution of assets was "income, gains, or profits within the meaning of the Income Tax Law." The difference between the plaintiffs in those cases and the plaintiff in the present case is that they are individuals, while the plaintiff in the case at bar is a corporation. Such difference, however, is not material, because, as has been seen, under the law the income to be taxed is the same in the case of corporations as in the case of individuals. Moreover, section 2, par. G, subd. (b), provides for the ascertainment of the net income of a corporation by making deductions, not from its gross receipts, but from its "gross income."

It is perhaps worthy of observation that Congress, being without authority to levy an income tax until February 25, 1913, when the

Sixteenth Amendment was adopted, provided in Act 1913, par. G, (c), that the tax for that year should be upon the entire net income accrued within that portion of said year from March 1st to December 31st, both dates inclusive, to be ascertained by taking five-sixths of the entire net income for said calendar year. In paragraph S of section 4, which repeals the Excise Tax Act of 1909 (Act Aug. 5, 1909, c. 6, 36 Stat. 11), save with respect to pending cases, there is a provision that, for the special excise tax covering the first two months of 1913, it should be computed upon one-sixth of the entire net income of the corporation for said year, which said income, however, was to be ascertained in accordance with subdivision G of section 2 of the act of 1913. There is a further provision in the act of 1913 that the act of 1909 should remain in force for the collection of the excise tax in the latter act, but provided that for the year 1913 it should not be necessary to make more than one return and assessment for all the taxes imposed.

Without further referring to other provisions in the repealing portion of the act of 1913, it seems clear that the excise tax for January and February was intended to be computed upon "one-sixth of the entire net income" for the year 1913, and that said net income was to be ascertained in accordance with the provisions of subdivision G, section 2, of that act. The provisions in the repealing part of the act of 1913 do not change or add to the subject of taxation. That subject of taxation was to be net income accruing to the corporation. Unless the dividends in question are taxable as income under the prior provisions of the act, which related to corporations, then clearly such dividends are not taxable under the proviso.

Because of the view this court has taken of the rights of the plaintiff in this case, it is not deemed necessary, or perhaps even profitable, to consider other questions that have been raised. It seems to be clear that the Gulf Oil Corporation, being a holding company and owning all the shares, except such as were necessary to qualify the directors (one share for each), in reality received nothing in pursuance of the declaration of dividends by the subsidiaries which it has not owned before.

Under all the facts, and in consideration of the law applicable thereto, this court has reached the following conclusions:

1. The dividends in question in this suit were not subject to the tax imposed, because they were a distribution of surplus earnings arising through a period of years, and which had accrued to, and the equitable ownership thereof was vested in, the plaintiff prior to January 1, 1913, and such earnings were not intended by Congress to be subject to taxation.

2. That judgment should be entered in favor of the plaintiff and against the defendant for the amount claimed, to wit, $114,244.40, with interest to be added from February 17, 1915, and that an order for judgment, with a correct calculation of the debt and interest, may be submitted.