# CASES

## ARGUED AND DETERMINED

IN THE

# UNITED STATES CIRCUIT COURTS OF APPEALS AND THE DISTRICT COURTS

---

LEWELLYN, Internal Revenue Collector, v. GULF OIL CORP.

(Circuit Court of Appeals, Third Circuit.   October 8, 1917.)

No. 2254.

1. INTERNAL REVENUE ⬥9—CORPORATIONS—INCOME TAXES.
   Though a corporation and a number of subsidiary corporations all of whose stock (except directors' shares) it owned were engaged in a common enterprise, where the corporation and each of the subsidiaries attended to its own branch of the enterprise, and each of the subsidiary corporations owned its own assets, carried on its own business, owed its own debts, paid its own taxes and enjoyed its own income, there was no such identity between the main corporation and the subsidiaries as to render a dividend received by the main corporation from the subsidiaries nontaxable under Corporation Excise Act Aug. 5, 1909, c. 6, 36 Stat. 112, and Income Tax Act Oct. 3, 1913, c. 16, 38 Stat. 114.

2. INTERNAL REVENUE ⬥9—CORPORATIONS—INCOME TAXES.
   Where the subsidiary corporations had accumulated earnings, none of which had become capital, but which had been used in carrying on the several enterprises in which the companies were engaged, but which had been sometimes used to aid others of the subsidiary corporations, instead of being used to promote the particular business that had earned them, and the subsidiary corporations declared dividends, which were not paid in cash, but were paid by the main corporation taking over the debtor and creditor accounts existing among the subsidiary corporations, the property received by it was received as a dividend, and was taxable under the Corporation Excise Act of 1909 and the Income Tax Act of October 3, 1913; it being immaterial that one of the stockholders received almost all of the dividend, or that the stockholder in question was itself a corporation, and not an individual.

In Error to the District Court of the United States for the Western District of Pennsylvania; Charles P. Orr, Judge.

Action by the Gulf Oil Corporation against C. G. Lewellyn, Collector of Internal Revenue.   Judgment for plaintiff (242 Fed. 709), and defendant brings error.   Reversed, with instructions.

E. Lowry Humes and B. B. McGinnis, both of Pittsburgh, Pa., for plaintiff in error.

J. H. Beal and W. A. Seifert, both of Pittsburgh, Pa. (Reed, Smith, Shaw & Beal, of Pittsburgh, Pa., of counsel), for defendant in error.

Before BUFFINGTON, McPHERSON, and WOOLLEY, Circuit Judges.

---

⬥For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

245 F.—1

McPHERSON, Circuit Judge. In this suit the Gulf Oil Corporation seeks to recover the taxes for 1913 that were assessed against it under the act of October 3, 1913. Payment was made under protest, and repayment was refused by the Commissioner of Internal Revenue. The Corporation recovered a judgment of $128,524.95. 242 Fed. 709.

The trial was without a jury, and for convenience we repeat here the findings of fact in the District Court:

"(1) The Gulf Oil Corporation is a corporation duly organized under the laws of the state of New Jersey. C. G. Lewellyn is the collector of internal revenue for the Twenty-Third district of Pennsylvania, being duly commissioned as such pursuant to the laws of the United States of America.

"(2) The Gulf Oil Corporation, on the 14th day of February, 1914, in compliance with the provisions of the act of Congress of October 3, 1913, made a return of its annual net income for the 12 months ending December 31, 1913, as required by said act. In making said return the Gulf Oil Corporation certified that it had not included in the statement of gross income for the year 1913 certain dividends, amounting to $11,424,440, received by it from subsidiary companies out of earnings and surplus of said subsidiary companies accrued prior to January 1, 1913.

"(3) In said return the Gulf Oil Corporation showed net income for the 12 months ending December 31, 1913, of $886,250.44, but under date of May 1, 1914, the said C. G. Lewellyn, collector, mailed to said corporation notice of an assessment of tax thereon amounting to $9,072.56. A claim for abatement of this overcharge, amounting to $210.06, was filed with the collector June 9, 1914, and on June 30, 1914, the Gulf Oil Corporation paid to the said C. G. Lewellyn, collector, the sum of $8,862.50, being the amount of said assessment, less the $210.06 for which abatement was claimed. Said claim for abatement having been disallowed, said Gulf Oil Corporation, on the 5th day of November, 1914, paid the said collector the additional sum of $210.06, with interest amounting to $6.30, making a total payment of $216.36.

"(4) On the 30th day of December, 1914, the said C. G. Lewellyn, collector, acting under instructions from the Commissioner of Internal Revenue at Washington, D. C., mailed notice and demand for tax assessment against the Gulf Oil Corporation for the year ending December 31, 1913, amounting to $114,034.-34. In fact, this additional assessment amounted to $114,244.40, being the 1 per cent. upon the entire amount of the dividends received by the Gulf Oil Corporation from subsidiary companies out of surplus accrued to such subsidiaries prior to January 1, 1913, and payable to the Gulf Oil Corporation prior to March 1, 1913, and said additional assessment was based solely on said dividends. In making the assessment, however, the Commissioner of Internal Revenue reconsidered and allowed the previous claim or abatement of $210.06, erroneously assessed against the corporation in the original assessment, and credited the same as having been paid upon the assessment of December 30, 1914, leaving the net balance of such assessment $114,034.34 as stated.

"(5) The notice and demand of the said C. G. Lewellyn, collector, for the payment of this additional tax recited that if the tax is not paid on or before January 8, 1915, it would be the duty of the collector to collect said tax, together with 5 per cent. additional and interest at the rate of 1 per cent. per month until paid.

"(6) That subsequently the plaintiff filed with the defendant for presentation to the Commissioner of Internal Revenue a claim for the abatement of said income tax amounting to $114,034.34, a copy of which claim is attached to and made a part of plaintiff's statement as Exhibit A. That after an examination of said claim for abatement the Commissioner of Internal Revenue rejected the same.

"(7) On February 17, 1915, the said Gulf Oil Corporation paid to the said C. G. Lewellyn, collector, said additional income taxes assessed for the period ending December 31, 1913, in the sum of $114,034.34, and at the same time filed with said C. G. Lewellyn a written protest, a copy of which protest is attached to and made a part of plaintiff's statement as Exhibit B.

"(8) That subsequently the plaintiff filed with the said C. G. Lewellyn for presentation to the Commissioner of Internal Revenue a claim for the refund of the net amount of the assessment of said income tax, to wit, $114,034.-34, and also the amount of the credit allowed thereon of $210.06, representing an overassessment against the corporation on the basis of its return as originally filed, the two amounts constituting the entire amount of the additional assessment in the sum of $114,244.40. A copy of the said claim for refund is attached to and made a part of plaintiff's statement as Exhibit C.

"(9) That after consideration of said claim for refund, the Commissioner of Internal Revenue rejected the same, and the said C. G. Lewellyn was instructed to notify the Gulf Oil Corporation, and on or about April 13, 1915, did so notify said corporation, that said claim was rejected, a copy of which notice is attached to and made a part of plaintiff's statement as Exhibit D.

"(10) That plaintiff is a holding company, and continuously since its organization in February, 1907, it has been the owner of all of the capital stock of the J. M. Guffey Petroleum Company, the Gulf Pipe Line Company, the Gulf Pipe Line Company of Oklahoma, and for many years has been the owner of all of the capital stock of the Indiana Oil & Gas Company and the Gulf Commissary Company, except in the case of each company of directors' qualifying shares, and was the owner of said shares during all of the period in which the earnings have accumulated out of which the dividends in question in this case were declared and paid.

"That with the exception of the Indiana Oil & Gas Company and the Gulf Commissary Company, and a dividend of the J. M. Guffey Petroleum Company hereafter referred to, no dividends were paid by any of the above-named subsidiary companies prior to December 31, 1912. All of the earnings of said companies prior to said date were either invested as earned in the extension and development of the properties and business of the companies mentioned or allowed to accumulate in the treasuries of such companies respectively, and all of the said earnings were actually used and required in carrying on the business of the subsidiary companies.

"In January of 1913 the officers of the Gulf Oil Corporation, plaintiff, decided that the accumulated earnings and surpluses of these subsidiary companies should be taken over by the plaintiff company in the form of dividends and accordingly:

"(11) On February 7, 1913, the J. M. Guffey Petroleum Company declared and authorized out of its accumulated surplus earned prior to January 1, 1913, the immediate payment of a dividend of which the Gulf Oil Corporation received $3,749,750. Payment of said dividend was made April 11, 1913.

"(12) On February 7, 1913, the Gulf Pipe Line Company declared and authorized out of its accumulated surplus earned prior to January 1, 1913, the immediate payment of a dividend, of which the Gulf Oil Corporation received $4,-724,055. Payment of said dividend was made April 11, 1913.

"(13) On February 7, 1913, the Gulf Pipe Line Company of Oklahoma declared and authorized out of its accumulated surplus earned prior to January 1, 1913, the immediate payment of a dividend of which the Gulf Oil Corporation received $2,597,660. Payment of said dividend was made April 11, 1913.

"(14) On January 8, 1913, the Indiana Oil & Gas Company declared and authorized out of its accumulated surplus earned prior to January 1, 1913, the immediate payment of a dividend, of which the Gulf Oil Corporation received $338,000, and on February 24, 1913, declared and authorized the immediate payment of a dividend, of which the Gulf Oil Corporation received $10,000. Payment of the dividend declared January 8, 1913, was made on that day and payment of the dividend declared February 24, 1913, was made on February 25, 1913.

"(15) On December 17, 1912, the Gulf Commissary Company declared and authorized out of its accumulated surplus earned prior to December 17, 1912, the payment of a dividend, of which the Gulf Oil Corporation received $4,975. Payment of said dividend was not made until January 4, 1913.

"(16) Payment of said dividends by the J. M. Guffey Petroleum Company, the Gulf Pipe Line Company, and the Gulf Pipe Line Company of Oklahoma was made as follows:

"The several companies mentioned, together with certain other companies, constituted a single enterprise carried on by the plaintiff; that enterprise consisting in a general way of the production and purchase of crude oil, the transportation of oil, and the refining and marketing thereof. During the period in question the business of producing and purchasing oil was carried on principally in the state of Oklahoma, where also the oil was gathered and stored; the transportation of oil by pipe lines from points in the state of Oklahoma and in Texas to the Gulf of Mexico, where the company owned refineries in which the refined products were manufactured. The marketing of these products was carried on over a large part of the United States and in foreign countries, and for the purpose of shipping such refined products the company owned and operated its own fleet of carrying vessels.

"At the time of the declaration of the dividends before referred to all of the earnings of the subsidiary companies had been retained in those companies, treating the subsidiary company collectively, although for the purposes of the enterprise as a whole, it was necessary that the funds or credit of one subsidiary be loaned to and used by another. As a result of this at the time of the declaration of said dividends there existed among the subsidiary companies considerable indebtedness, evidenced by book accounts; such indebtedness arising almost entirely through transactions between such companies in the purchase and sale of oil or property.

"All of these funds were either invested in properties or actually required in the carrying on of the business of the subsidiary companies, so that the subsidiary companies were without moneys with which to make payment of this intercompany indebtedness. For the purpose of clearing the transaction the matter was consummated on the same day, to wit, April 11, 1913, and in this way:

"The Gulf Oil Corporation took over upon its books the amount of the dividends before mentioned (other than the Indiana Oil & Gas Company and the Gulf Commissary Company, which it had already received) and at the same time set up upon its books accounts receivable owing to it by various subsidiaries aggregating the amount of the dividends so received. Upon the books of the subsidiary companies entries showing the same facts were made, and all of these entries were made upon vouchers passed between the parties to the transactions.

"As a result, the subsidiary companies collectively, after the payment of this dividend, owned substantially the same amount as prior thereto had been owing to some of the subsidiaries by other subsidiaries, but such indebtedness was shifted so that it was owing entirely to the Gulf Oil Corporation; and the Gulf Oil Corporation, after the payment of the dividends, had no property assets which prior thereto was not represented in the shares of stock of the subsidiary companies owned by it, but it had upon its books accounts receivable of subsidiary companies, which together with the shares of stock of the various subsidiary companies owned by it represented the same property and assets as was represented by the shares of stock alone prior to the declaration and payment of said dividends.

"(17) The only dividend declared by the J. M. Guffey Petroleum Company prior to January 1, 1913, was a dividend of $2,024,865, declared and paid in the year 1912, but the moneys out of which that dividend was paid arose out of the sale by the J. M. Guffey Petroleum Company to the Gulf Refining Company (another subsidiary of the plaintiff company) of certain ships owned by it and was merely the carrying out of a change of ownership of the property from one subsidiary to another.

"(18) That the said J. M. Guffey Petroleum Company, Gulf Pipe Line Company, Gulf Pipe Line Company of Oklahoma, Indiana Oil & Gas Company, and Gulf Commissary Company were all corporations subject to the payment of the excise tax imposed by the act of Congress of August 5, 1909 (36 Stat. 11-112), and that all of said companies had in fact paid all of the taxes imposed upon them under the provisions of the said act, including such taxes on the earnings from which said dividends were declared."

We may summarize the facts as follows: For a number of years the Corporation has owned all the stock (except directors' shares)

of the five subsidiaries named; and it owned this stock while the subsidiaries were accumulating the earnings that were afterward transferred to the Corporation in the form of dividends. With exceptions not now material, none of the subsidiaries had declared a dividend before December 31, 1912; the previous earnings had been used from time to time in carrying on, extending, and developing the several enterprises in which they were engaged, and the earnings were properly employed for these purposes. In January, 1913, the Corporation decided to have these earnings transferred to itself, and thereupon the subsidiaries took the following steps: On February 7, 1913, the Guffey Petroleum Company, the Gulf Pipe Line Company, and the Gulf Pipe Line Company of Oklahoma, each declared a dividend, payable immediately, out of the surplus and earnings that had accumulated before January 1, 1913; and on April 11, the corporation received on this account from the Guffey Company $3,749,750, from the Gulf Pipe Line Company $4,724,055, and from the Gulf Pipe Line Company of Oklahoma $2,597,660. The Indiana Oil & Gas Company declared two dividends out of similar surplus and earnings, one on January 8, 1913, from which the Corporation received on the same day $338,000, and one on February 24, 1913, from which on February 25 the Corporation received $10,000. Out of similar earnings and surplus, the Gulf Commissary Company declared a dividend on December 17, 1912, from which on January 4, 1913, the Corporation received $4,975. The respective dividends were not declared in cash; the earnings, as and when produced, had been employed in the several enterprises, and had thus been invested in different kinds of property. They had not always been used to promote the particular business that had earned them, but had been sometimes used to aid another branch; the subsidiaries keeping a debtor and creditor account among themselves. In this situation, the Corporation made a return to the government of its income for 1913, certifying that the return did not include the dividends referred to, and giving as a reason that they had been declared and paid out of earnings and surplus that had accrued before January 1, 1913. The collector, however, demanded a total tax of $114,244.40 from the Corporation for the year 1913, basing the assessment solely on the receipt of these dividends. This was in part a franchise tax, and in part an income tax. After various proceedings—claim for abatement, protest, payment, petition for repayment, and the Commissioner's refusal—the controversy reached the District Court in the suit now before us. The subsidiaries had all been subject to the excise or franchise tax under the act of August 5, 1909, and they had all paid the amounts imposed thereunder. The sum now in dispute was not charged against the subsidiaries, but against the Corporation alone, and is made up of a franchise tax for the first two months of 1913 and of an income tax for the remaining ten months. The opinion of the District Judge sets forth the argument that led him to decide that the taxes were unlawfully imposed—the position being that the dividends had been declared out of surplus earnings that had accumulated during several years and had accrued to the Corporation (at least in equitable owner-

ship) before January 1, 1913. We are unable to assent to this proposition for the following reasons:

[1] It is first to be observed (and this should be borne distinctly in mind) that the government's levy was not upon the subsidiaries, but upon one of their stockholders, namely, upon the Gulf Oil Corporation. We do not understand the Corporation to lay stress upon a supposed identity of the five subsidiaries with itself, but in any event the facts in proof would furnish a sufficient answer to such a position. No doubt all the companies are engaged together in a common enterprise, but the enterprise has several branches, and each subsidiary attends to its own branch, while the Corporation does the like. Perhaps the Corporation may be more accurately described as uniting and regulating its subsidiaries; but each of the companies, whether holding or subsidiary, is a distinct entity, and is to be so treated. The several companies are not in such relations to each other that the property and obligations and liabilities of one can be regarded as the property and obligations and liabilities of any other. Each owns its own assets, carries on its own business, owes its own debts, pays its own taxes, and enjoys its own income. Under the Excise Act of 1909, each was separately taxed in respect of its own business, and under that act the Corporation certainly did not include in its own return the proceeds of the business done by the subsidiaries.

[2] Now, if the Corporation had been an individual, and had received the property in question by the method of transfer described in the findings of fact, the contention would hardly be made that no dividend had in fact been declared or received; for, although no actual money might have passed, each company would have transferred the ownership of valuable property to one of its stockholders, who could thenceforth deal with it as he pleased, and could convert it into cash whenever he might desire. The fact that the stockholder happens to be incorporated can make no difference. The central question is, Has a dividend been declared? If the Corporation has received a "dividend," this dividend has been declared by the act to be "income"; and, as income, Congress has directed it to be used in measuring both the taxes now in dispute. That the money (or property) handed over to the Corporation was a dividend we entertain no doubt. All the property transferred had been derived from earnings; none of it had become capital; it had been accumulated like cash, having been gained in the course of each subsidiary's business, and it awaited the pleasure of the respective boards of directors. These boards did not carry it to capital account; they did not issue stock to represent its value; they did not retain it for future use in their respective businesses; they decided to distribute it formally to their stockholders as a dividend, just as if it had been money; and they did in fact distribute it. No doubt one of the stockholders received almost all of it; but this did not change the character of the directors' act, which continued to be the declaration of a dividend, judged by the accepted tests. Gibbons v. Mahon, 136 U. S. 549, 10 Sup. Ct. 1057, 34 L. Ed. 525. It can make no difference in the character of the directors' act that the stockholder in question is a corporation and not an individual. Whether a distribu-

tion of corporate property is to be regarded as a dividend or not does not depend on the status of the person that receives a share, but on what is done by the distributor. In the first instance, the money or property is owned by the distributor, and as owner he has the power to decide what is to become of it. After the stockholder receives it, he may use it as he likes; but it comes into his hands as a dividend, whether he be an individual or a chartered company. We conclude, therefore, that the Gulf Oil Corporation received the property in question in the character of a separate stockholder in the subsidiaries and received it as a dividend.

Being a dividend, the Corporation received it after March 1, 1913, and the remaining question is whether taxes have been laid upon it, and, if so, to what extent and in what manner? In thus speaking of a tax being laid upon property, we use the customary phrase; in strictness, taxes like the sum in question are not upon the property itself, but are exacted from the taxpayer because of his relation to the property. The owner pays, and the property measures the amount of the exaction. This is emphasized in the case before us, where two taxes are levied upon the same taxpayer; each tax is levied in respect of a different subject of taxation, but the amount of each is ascertained by the same measure, namely, by the taxpayer's income. For the year 1913, the Corporation was called upon to pay two taxes—one, an excise or a franchise tax for January and February; and the other, an income tax for the remaining 10 months. But the amount of the excise tax was measured by the Corporation's income, and the amount of the tax in respect of the income itself was determined by the same measure. Before February 25, 1913, Congress could not tax the Corporation's income directly, but it *could* value its franchise according to its income, and could impose the tax on that basis. Maine v. Railway Co., 142 U. S. 217, 12 Sup. Ct. 121, 163, 35 L. Ed. 994. After the adoption of the Income Tax Amendment, Congress could tax the income directly, and for the remainder of the year it did tax the income in this manner. Each tax being computed by the same method, both were collected in one sum for convenience, but each depends for its validity on separate provisions. And we may add that Congress was not bound to go into a minute inquiry concerning the source of earnings that might be divided, or concerning the method by which they had been accumulated. For we have to do with a situation where the property divided is concededly earnings, and our decision is confined to the facts before us.

The foregoing is the course of reasoning that commends itself to our minds. and we may briefly restate the conclusions. As levied by the act of 1913, both taxes are constitutional, and each was distinctly laid on a separate subject of taxation. The excise or franchise tax was limited to the first two months of the year, and the value of the franchise was lawfully ascertained by using the Corporation's income as a measure; the income tax was for the remainder of the year, and was lawfully ascertained by using the same measure. In computing the Corporation's income, the government lawfully took into account the valuable property over which the Corporation had acquired the com-

plete ownership by virtue of its stock in the several subsidiaries; this ownership having been transferred to it by the formal declaration of a dividend. In exact terms the facts present the conditions laid down by the act of Congress, and therefore (as no question is made concerning the regularity of the government's procedure) the amount of the two taxes was lawfully levied and collected.

The case of Lynch, Collector, v. Turrish (C. C. A. 8) 236 Fed. 653, 149 C. C. A. 649, on which the Corporation relies with much confidence, does not seem to be in point. The facts were these: Turrish was a stockholder in the Payette Lumber Company, whose capital stock, $1,500,000, was invested in timber lands. The company did no business and earned no money, but the value of its lands increased gradually until, on March 1, 1913, it had grown to be $3,000,000. In 1914 the company sold the lands—that is, all its capital—for $3,000,000 and divided this sum among its stockholders. The share of Turrish was taxed as income received during 1914, and the Court of Appeals decided that he was not liable:

"Because no income, gains, or profits accrued to the plaintiff during the year 1914, or after March 1, 1913, but during that time his property remained of the same value, and because the sale of the property of the Payette Company in 1914 and the distribution of its proceeds by a dividend to its stockholders was but a change of the form, without any increase of the value, of the property he owned before the Income Tax Law of 1913 took effect."

The case did not involve the question of an ordinary dividend from accumulated earnings, but decided that a sale of capital property and a distribution of the proceeds did not constitute the division of "income, gains, or profits" within the meaning of the act of 1913. No such facts are before us now. We may add that the decision is to be reviewed by the Supreme Court.

A situation more like the case in hand is found in Southern Pacific Co. v. Lowe (D. C.) 238 Fed. 847, where Judge Manton delivered an opinion that discusses the general subject satisfactorily. We shall not take up other citations in the briefs of counsel; most of them may be distinguished on their facts, and in any event the question here, if we have outlined it correctly, seems to suggest an answer that is reasonably plain. Moreover, the two cases just referred to cite and consider nearly all the cases to which our attention has been called.

One or two minor questions have been raised, but they do not require attention. The important points have been stated, briefly, but we hope adequately, and, if they have been correctly decided, we see no need for a more elaborate discussion.

The judgment is reversed, with instructions to the District Court to enter a judgment in favor of the collector.