## Appeal of ELMER E. RODENBOUGH, Executor of the Estate of ELIZABETH McCAHAN RODENBOUGH, Deceased.

Docket No. 465.

The value of property purchased by decedent through investments of proceeds of sale of securities acquired by decedent as a share in the estate of a prior decedent who died within five years and on whose estate an estate tax was paid, was acquired in exchange within the meaning of section 403(a)(2) of the Revenue Act of 1918 and such value is not properly to be included in the value of decedent's gross estate.

Submitted January 5, 1925; decided January 31, 1925.

*William C. Alexander, Walter Lee Sheppard,* and *A. H. Paul, Esqs.,* for the taxpayer.

*J. C. Swayze, Esq.* (Nelson T. Hartson, Solicitor of Internal Revenue) for the Commissioner.

### Before IVINS, KORNER, and MARQUETTE.

This appeal involves an estate tax determined by the Commissioner to be due from the taxpayer in the amount of $113,000 under the Revenue Act of 1918. The matter in issue is the inclusion in the gross estate of decedent of the value of certain property acquired by decedent through the investment of the proceeds of sales of certain securities acquired by decedent as a share in the estate of her father who died within five years prior to the death of decedent, and on whose estate the estate taxes were paid.

#### FINDINGS OF FACT.

1. Elizabeth McCahan Rodenbough, the decedent, died October 15, 1921. She was a daughter and one of the three residuary legatees who shared equally under the will of William J. McCahan, her father, who died March 10, 1918, and on whose estate an estate tax of $2,894,173.55 was paid.

2. The net estate of William J. McCahan, deceased, as determined by the Commissioner, was $14,688,694.20. Deducting the estate tax paid, the estate for distribution to the legatees plus exemption was $11,844,520.65. The value of the share of the decedent in her father's estate was $3,831,506.22.

3. The assets which comprised the estate of William J. McCahan consisted principally of stocks and bonds. In the distribution of assets of the estate of William J. McCahan the decedent received, as her share among other property, the following securities:

(*a*) $17,000 Phila. Co. 1st mtge. 5s, 1949.
(*b*) $34,000 Bethlehem Steel Co. 1st & ref. 5s, 1949.
(*c*) 333 shares Real Estate Trust Co., Phila., pfd.
(*d*) $50,000 Public Service Co. of N. J. 3 yr. 5s, 1919.
(*e*) $46,000 Manati Sugar 1st mtge. 6s.
(*f*) $23,000 Cuban Commercial & Industrial Co. 1st mtge. 5s.
(*g*) 432 shares Francisco Sugar Co.
(*h*) $92,400 Francisco Sugar Co. 1st mtge. 6s.
(*i*) 907 shares Kentucky Securities Co.
(*j*) $64,000 Washington Sugar Co. 1st mtge. 6s.
(*k*) ⅛ interest in bond and mtge., Wm. T. Bailey & Co.
(*l*) 4,051 shares W. J. McCahan Sugar Refining Co.

The actual delivery to the decedent of the above securities was made early in December, 1918.

4. Between December 18, 1918, and January 21, 1919, the decedent sold of the securities set forth in paragraph 3:

$17,000 Phila. Co. 1st mtge. 5s.
$34,000 Bethlehem Steel Co. 1st lien ref. 5s.
333 shares Real Estate Trust Co. pd.,

receiving a total from the said sales of $78,710.93. On January 17, 1919, the decedent purchased $50,000 Virginia Joint Stock Land Bank 5s 1938 at a cost of $51,000.

5. On March 1, 1919, being the maturity thereof, the decedent received $50,000 from the Public Service Corporation of New Jersey in payment of the 5 per cent notes received by her, as set forth in paragraph 3 above.

6. On April 22, 1919, the decedent entered into a contract to purchase a residence at Ardmore, Pennsylvania, for the sum of $100,000. At the time of making the said agreement the decedent paid on account the sum of $10,000.

7. On May 1, 1919, the decedent sold, of the securities set forth in paragraph 3 above, $23,000 Cuban Commercial & Industrial Company, first mortgage 7s, for the sum of $22,885. On May 20, 1919, the decedent sold, of the securities set forth in paragraph 3 above, $46,000 Manati Sugar first mortgage 6s for the sum of $48,300.

8. The decedent on June 16, 1919, paid the balance under her agreement of sale for the purchase of her residence at Ardmore, Pennsylvania, to wit, $90,000.

9. On June 12, 1919, the decedent sold, of the securties received by her, as set forth in paragraph 3 above, 132 shares of Francisco Sugar Company stock for the sum of $33,000.

10. On July 1, 1919, decedent purchased $100,000 Pennsylvania State 4¼s, due 1934, for the sum of $103,844.60.

11. On November 22, 1919, the decedent sold $23,000 Francisco Sugar Company first mortgage 6s, included in paragraph 3 above, for the sum of $23,000. The decedent paid off a loan made at the time of purchase of 156 shares of Manati Sugar Company stock at par, utilizing therefor $15,600.

12. On December 11, 1919, the decedent sold 900 shares of Kentucky Securities Company, included in paragraph 3 above, for the sum of $45,900. On January 12, 1920, decedent purchased 900 shares Kentucky Securities Corporation stock at 91, costing $45,900.

13. On June 25, 1920, the decedent sold $46,000 Washington Sugar first mortgage 6s in the sum of $64,000, included in paragraph 3 above. On July 14, 1920, the decedent sold $14,400 Francisco Sugar Co. first mortgage 6s, included in paragraph 3 above, for the sum of $14,364, making a total from said sales of $78,364. Decedent purchased on October 18, 1920, $60,000 Butler County 5½ per cent road improvement bonds for the sum of $62,178 and 302 shares of U. G. I. Co. stock at 39⅝ for the sum of $12,035.55.

14. On November 12, 1920, decedent received from the estate of William J. McCahan her portion of the proceeds of payment of the mortgage of William T. Bailey Co., set forth in paragraph 3 above, likewise her portion of a refund of the estate tax in the estate of William J. McCahan, the amount so received by decedent being

$40,000. Decedent purchased on November 12, 1920, 300 shares of Cuba Cane Sugar Corporation preferred stock for the sum of $21,170, and on November 17th and 18th purchased $30,000 Cuba Cane Sugar Corporation 7s for the sum of $26,170.

15. On December 1, 1920, the W. J. McCahan Sugar Refining Co., in accordance with resolution of its directors and stockholders, sold its plant and manufacturing assets and from that time engaged in no business but proceeded to a liquidation of its assets and their distribution in liquidation to the stockholders. The first distribution in liquidation was made on December 14, 1920.

16. The decedent at this time owned 3,051 shares of the stock of the W. J. McCahan Sugar Refining Co. which she had received from her father's estate. On the 3,051 shares of stock which she received from her father's estate she received a distribution of $325 per share, totaling $991,575. Subsequently she invested in certain other securities, identified at the hearing but here unnecessary to enumerate, in the amount of $754,234.05.

17. In June of 1921, decedent received another distribution on the stock of the W. J. McCahan Sugar Refining Co. which she received from her father's estate in the sum of $305,100. Subsequently she invested in other securities, identified at the hearing but here unnecessary to enumerate, in the amount of $252,375.

18. As set forth in paragraphs 16 and 17 above, the total distributions in liquidation received by the decedent on shares of stock of the William J. McCahan Sugar Refining Co., which she received from her father's estate, totaled $1,296,675. The cost of the investments made by the decedent was $1,006,609.05. The decedent at the time of her death had a balance of cash in the Philadelphia Trust Co. of $28,349.85.

19. Upon receipt of the proceeds of the sales, maturities and liquidation distributions, as set forth above, decedent deposited same to her credit in a banking account consisting of funds derived from other and miscellaneous sources. Subsequent purchases and payments were made by check drawn against said account. Between the dates of such deposit and withdrawals in payment for the subsequent purchases set forth in the agreed findings, the balance in the said banking account was at no time lower than the amount required to make said purchases.

20. The Commissioner determined that the value of the property and securities purchased by the decedent through investments of the proceeds of sale of the securities acquired by decedent as her share of her father's estate, as above set out, should be included in the valuation of the gross estate of the decedent. He notified the taxpayer by registered letter dated September 22, 1924, of such determination and of the deficiency occasioned thereby. The taxpayer appealed to this Board. Petition was filed October 27, 1924.

### DECISION.

The tax should be computed in accordance with the following opinion. Final decision of the Board will be settled on consent or on seven days' notice, in accordance with Rule 50.

OPINION.

KORNER: The Commissioner held that the value of property purchased by the decedent through investments of proceeds of sale of property acquired by decedent as a share in the estate of a prior decedent who died within five years, on whose estate an estate tax was paid, was not acquired in exchange within the meaning of section 403(a) (2) of the revenue act of 1918, and, therefore, its value is not deductible from the value of decedent's gross estate as property so received in exchange. The taxpayer contends that the Commissioner was in error in so holding and that such property so acquired by decedent can be identified as having been acquired by decedent in exchange for the property received from her father's estate.

It is no longer open to debate that the estate tax imposed by the revenue act under consideration is not a tax upon the property of the decedent, but is a tax imposed upon the transfer of the net estate of every decedent measured by its value ascertained by deducting, in the case of a resident, certain items among which are those specified in section 403(a) (2), hereinafter quoted. *Knowlton* v. *Moore*, 178 U. S. 44; *New York Trust Company* v. *Eisner*, 256 U. S. 345; *Hill* v. *Grissom*, 299 Fed. 641.

*Knowlton* v. *Moore, supra*, makes it clearly to appear that this statute imposes a *death duty* on the right to transmit and not a tax on the property of the decedent. A careful reading of the statute indicates that Congress intended the value of the property of the decedent to be taken merely as the measure of this death duty. In section 401 it provides " that * * * a tax equal to the sum of the following percentages of the value of the net estate (determined as provided in section 403) is hereby imposed upon the transfer of the net estate of every decedent." The tax is not levied on the net estate thus transferred. It is apparent that it is the *transfer* which is taxed and that the amount of the tax is measured by the value of such net estate transferred. Again, section 402 provides " that the *value* of the gross estate of the decedent shall be determined by *including the value* at the time of his death of all property, real and personal, tangible or intangible," to the extent of decedent's interest therein. It does not provide " that the *gross estate* shall be determined by including at the time of his death *all property* of the decedent." The aptness of the phraseology used by Congress in expressing the idea that it is considering *values* rather than properties, is unmistakable. So also in section 403(a) (2), now under consideration, there is provided a deduction from the value of the gross estate of an amount equal to the value at time of decedent's death of any property which can be identified as having been received by decedent as a share in the estate of any person who died within five years prior thereto, or which can be identified as having been acquired by decedent in exchange for property so received, " if an estate tax under * * * this Act was collected from such estate." The quoted phrase is significant. It carefully avoids the expression or connotation of a tax having been collected *on such property.*

The value of the gross estate having been determined under section 402, the statute then prescribed in section 403 (*a*) (2) the method

of determining the value of the net estate. The sole issue in this appeal arises under this latter section which is, in part, as follows:

SEC. 403. That for the purpose of the tax the value of the net estate shall be determined—

(a) In the case of a resident, by deducting from the value of the gross estate—

(1)   *   *   *

(2) An amount equal to the value at the time of the decedent's death of any property, real, personal, or mixed, which can be identified as having been received by the decedent as a share in the estate of any person who died within five years prior to the death of the decedent, or which can be identified as having been acquired by the decedent in exchange for property so received, if an estate tax under the Revenue Act of 1917 or under this act was collected from such estate, and if such property is included in the decedent's estate.

Counsel for the Government contend that, (1) under the facts shown, the proceeds derived from the sale or other disposition of the property received from the prior decedent and commingled with other funds are not sufficiently identified to entitle the estate to the deduction on account thereof, and (2) the deduction for substituted property is limited to *one* exchange and consequently where the property received from the prior decedent is sold or otherwise disposed of and the proceeds are reinvested, more than one exchange has been effected and the right to the deduction is lost.

The first contention is in effect that the evidence fails to show that the property, the value of which is claimed as a deduction, was purchased with the proceeds derived from the sale or other disposition of the property received from her father. It is not disputed that decedent received from her father's estate, on which an estate tax had been paid, certain securities which are listed in detail in the Findings of Fact. It is not denied that certain of these securities were sold and that others matured and were liquidated by the obligors. In each case the decedent received payment by check which she deposited to her credit at her bank. It is admitted that she thereupon purchased other securities of approximately equal value to those disposed of by her. In one instance instead of buying other securities the decedent bought a house for a residence. Between the dates of such deposit and withdrawals in payment for the subsequent purchases, the balance in her banking account was at no time lower than the amount required to make such purchases. The basis for the Government's first contention is that none of the proceeds of the sales and liquidation distributions can be identified as invested in the subsequent securities and since none can be identified, none were so used. It is argued that this failure of identification is due to the fact that other funds of decedent were deposited in the same account with the proceeds of sales and liquidation distributions above referred to. This is in effect to say that there must not only be an identification of the proceeds but that they must be identified to the point of showing the proceeds received and those invested were *identical.* This argument leads to the necessity of earmarking the funds, else there can be no way of showing they were *identical.* We do not think the statute goes to the length of such a requirement. As we have shown the deduction allowed in determining the net estate of a decedent is the *value* of property which can be identified as having been acquired in exchange. The deduc-

tion is not of the property itself. The statute does not use the word "identical" which is a word of far different import. The statute contemplates a deduction to the amount of the value of exchanged property, providing the source can be attributed to property inherited within five years.

We are not persuaded that the mere deposit of other funds by the decedent with the proceeds of her disposition of her inherited property would render the latter impossible of being identified. The earmarking of money is no longer the criterion employed by the courts. *Lowell* v. *Brown*, 284 Fed. 936, 940–941, citing numerous authorities.

But as we conceive the position taken by the Government at the hearing of this appeal, an extended discussion of the foregoing contention is unnecessary. At the hearing the Government counsel was asked this question: Suppose the decedent had sold a $10,000 Philadelphia Company bond which she had received from her father's estate and received therefor a check which she deposited in the Girard Trust Company in a special account specifically designated as an account to receive and hold the proceeds of the sale of this bond intact for reinvestment in another bond in like amount, would the Government contend that the value of the second bond bought with this special fund was not deductible? The answer was that the Government would so contend and go even further and hold that if the decedent died without reinvesting this special fund the special account containing this special fund (the value thereof) would likewise be not deductible in determining the net estate of decedent. The reason given was that *two exchanges* had taken place in the last mentioned transaction, (1) when decedent exchanged the bond for a check, and (2) when she deposited the check in the bank she received therefor a credit which constituted a contractual obligation of debtor and creditor as between the bank and herself and that this constituted a second exchange; and that, furthermore, if she then withdrew this special fund by check payable to another, a third exchange took place, and that when she delivered the check she had so drawn and received for it another bond, a fourth transaction occurred.

In view of this position we do not deem it necessary further to follow the contention as to earmarking or commingling of funds. In the postulated case there was a complete earmarking of the funds. Since even in such case the Government contends there was not an identification because of the exchange provision of the statute, we conclude that its position as to commingling of funds is not relied upon as determinative of this appeal.

We are brought then to the consideration of the sole remaining question of whether the reinvestment of the proceeds realized by sale or liquidation distribution of the properties received from her father's estate, constitutes an exchange of properties susceptible of identification as contemplated by section 403(a)(2). The position of the Government with respect to exchanges is apparent in the answer of counsel to the query above referred to. This position is that there can be but one exchange and that exchange must be in kind, and permits of no media in effecting the exchange. This is made clear by another question asked of Government counsel at the hearing, following the one above set out. He was asked: Suppose

the decedent received in liquidation distribution, or in a sale of a security, a check, would it be necessary for the decedent to hold this check in unchanged form until the time of her death (within five years of her father's death) in order to include its value in the deduction allowed by section 403 (a) (2)? The answer was that the Government would so contend. If then a person sold property acquired from a prior decedent, the proceeds, whether check, bullion. or currency, would of necessity have to be locked in a safe and its identity preserved to the point of showing it to be the identical property received, at the time of the death of the taxpayer's testator, to establish the deductibility of its value.

But business is not done that way. Such a rule would in effect construe the word "exchange" to mean "barter." And even in a barter the rule is equally inflexible because Government counsel stated that if the decedent acquired a house from her father's estate, of ascertained value, and was desirous of exchanging it for another house of equal value the exchange could not be consummated by a triangular exchange in which a third house of equal value was a factor. In modern days we look upon money as a mere medium of exchange. Money has no value otherwise. It is used to facilitate exchanges which would be impossible otherwise. We do not think that the use of such a recognized medium of exchange destroys the effect of a transaction as an exchange when the facts and circumstances clearly indicate the contrary.

We feel that a reasonable construction must be placed on the word "exchange" and that this may be done without interfering in any way with the result sought to be effected by Congress. The United States Circuit Court of Appeals, Eighth Circuit, in the case of *United States* v. *Ninety Nine Diamonds, et al.*, 139 Fed. 961, at page 966, said:

> The clear words of the statute, their certain meaning, the legal requirements that all the terms of the section which are consistent with each other shall be given effect, *a consideration of the subject of the legislation, of the object which the Congress was seeking to attain and of the evil which it was endeavoring to remedy*, point unerringly to the same result. (Italics ours.)

(Writ of certiorari denied by Supreme Court, 201 U. S. 645; 50 L. Ed. 903.)

The object which Congress sought to attain, the evil it endeavored to remedy, and the consideration given the subject of the legislation are found in the legislative history of section 403 (a) (2). The Ways and Means Committee report on the Revenue Bill of 1918, 65th Congress, 2nd Session, Report #767, accompanying H. R. 12863, on page 22 states as follows:

> An additional subdivision has been added to section 403 which will grant a deduction of *amounts* which have been received by the decedent as a share in the estate of any person who died within five years prior to the death of the decedent. It has come to the attention of the committee that persons closely related have died within such a short space of time that the same estate passing within a short period of time has been subjected to the estate tax and thereby diminished because of the short period within which the two levies have been made. For example, a husband dies leaving a large amount of property to his wife, an elderly woman, who dies within a few weeks after her husband's death. Under existing law the entire estate is taxed on the transfer from husband to wife and on the transfer from wife to other beneficiaries. The proposed amendment grants an interval of five years within which the deduction may be taken. (Italics ours.)

In introducing the bill in the House of Representatives, Mr. Kitchin made extended remarks thereon, and in discussion of this section as reported in the Congressional Record, in volume 56, part 12, appendix, page 692, dated Saturday, September 7, 1918, before the House sitting in Committee of the Whole House, etc., it is stated:

We have another very just provision that if a person who receives a share of an estate dies within five years from the death of the person from whom he receives the estate, *his share shall not pay another transfer tax within the five-year period.* Under existing law a person might die to-morrow leaving the gentleman from Michigan $1,000,000 and the estate tax on the million dollars would be paid. Then the gentleman might die a week from that time and his heirs, legatees, or devisees would have to pay on the same estate again. But we have provided that if the second man dies within five years after the death of the first one *the estate pays no tax in the second case.* (Italics ours.)

It is apparent that the commissioner recognized the object and intent of Congress as well as the evils sought to be remedied, for in promulgating Regulations 37, relating to estate tax under the Revenue Act of 1918, it was provided:

ART. 52. *Property acquired in exchange.*—The deduction for substituted property is limited to property acquired in exchange for the identical property received from the estate of the prior decedent. Where there is a subsequent exchange the right to deduction is lost. Where, however, *property is sold, and the proceeds immediately invested in other property, the property purchased is deemed to be taken in exchange, and its value is deductible.*

In the case of an exchange the executor must describe and identify fully both the property originally received from the prior estate and the property acquired in exchange therefor. He must also state the date and nature of the transaction by which the exchange was effected, the name and address of the transferee, and the consideration, if any, given or received by the decedent in addition to the property received from the prior estate. If the exchange was made by written instrument of public record, a precise reference must be made to the record containing the instrument, and if by instrument not of record a copy of the instrument must be supplied. If there was no written instrument, an affidavit as to the facts of the exchange by one or more persons having personal knowledge of the matter must be furnished.

If at the time of exchange the decedent gave a consideration in addition to the property received from the prior estate, and acquired property of greater value than the property so received, there may be deducted the proportion of the value of the property received in exchange which the value of the original property bears thereto. (Italics ours.)

The foregoing regulation was carried forward without change in the revision of Regulations 37 of January, 1920. In January, 1921, these regulations were again revised and article 52 was incorporated in the revision without change. The regulation contained in article 52, above quoted, remained in force and effect until July 27, 1922, when Regulations 63, relating to Estate Tax under the Revenue Act of 1921 were promulgated. At the latter date the Revenue Act of 1921 had been in effect for approximately eight months. Article 45 of Regulations 63 (the corresponding section to article 52 of Regulations 37) omits from its provisions the last sentence of the first paragraph of article 52 of Regulations 37, appearing in italics in the above quotation of the last-mentioned section. It likewise omitted *in toto* the last paragraph of article 52 of Regulations 37.

We are constrained to hold that article 52 of Regulations 37 correctly interprets the intent of Congress as expressed in section 403 (a) (2) of the revenue act of 1918. There is no dispute in this appeal as to the facts. The Government does not deny that the

investments were made by the decedent in the manner contended by the taxpayer. We do not understand it to be denied that the proceeds of the properties sold and otherwise realized on were actually invested in other securities and that the value of these latter securities is the deduction sought to be availed of by the taxpayer. The Government rests its case on the proposition that there can be but *one exchange* and that a reinvestment of money realized from property received from a prior decedent is not one exchange. As we have pointed out above, we are of opinion that such was not the intent of Congress in enacting section 403 (a) (2) of the revenue act of 1918; nor do we believe that such is the legal intendment of the language used in that section. We believe that article 52 of regulations 37 is a fair construction of the section it interprets and that the facts and circumstances evidenced in this appeal bring the taxpayer within the provisions of that article.