JOHN F. ARCHBOLD, EXECUTOR, ESTATE OF ANNIE M. DUSTIN, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 8629.    Promulgated October 21, 1927.

1. The amount allowable as a deduction under section 403(a)(2) of the Revenue Act of 1921 should not be reduced by the amount allowable as deductions under section 403(a)(1) and (3) or any part thereof where one bank account is maintained in which is deposited funds received from the sale of prior-taxed property and funds received from other sources and payments are made therefrom which give rise to the deductions under section 403(a)(1) and (3), provided the latter funds are always sufficient to pay the amounts which are allowable as deductions under section 403(a)(1) and (3).

2. The value of securities on hand at decedent's death which are bought with the proceeds of prior-taxed property as referred to in section 403(a)(2), Revenue Act of 1921, should be deducted as acquired in exchange for prior-taxed property in establishing the value of the net estate whose transfer is subject to be taxed for estate-tax purposes. *Appeal of Elmer E. Rodenbough,* 1 B. T. A. 477.

3. Where a decedent is entitled to a deduction as prior-taxed property on account of shares of stock received from a prior decedent as contemplated by section 403(a)(2), Revenue Act of 1921, and stock dividends are declared upon this stock between the deaths of the prior and second decedent, not only the value of the original shares, but also the value of the shares received as a stock dividend should be considered as prior-taxed property in determining the deduction allowable.

4. Where a decedent is entitled to a deduction as prior-taxed property on account of shares of stock received from a prior decedent as contemplated by section 403(a)(2), Revenue Act of 1921, and during the period between the deaths of the prior and second decedent, the second decedent exercises options offered by the corporations, whose stocks are so held, to subscribe for additional stock at a price which is less than the prevailing market price at the time, the value of the additional stock received is not to be considered as prior-taxed property in determining the deduction allowable.

*John G. Jackson, Esq.,* and *Wm. H. White, Jr., Esq.,* for the petitioner.

*R. E. Copes, Esq.,* for the respondent.

This proceeding involves a deficiency in estate tax in the amount of $65,402.77 under the Revenue Act of 1921, arising from the failure of the Commissioner to exclude certain property from the taxable estate of Annie M. Dustin as property which had been taxed as a part of the estate of a prior decedent who died within five years of the decedent whose executor appears in this proceeding. In addition, the executor raises two points which were not considered by the Commissioner in the determination of the foregoing deficiency

and which, if allowed and if the deficiency should be disallowed, would give rise to a refund. The two new points relate to the effect of stock dividends upon stock of the prior decedent and the exercise of stock subscription rights arising subsequent to the death of the prior decedent on previously taxed property.

### FINDINGS OF FACT.

John D. Archbold (hereinafter sometimes referred to as the " prior decedent ") died a resident of New York on December 5, 1916, leaving him surviving a widow, Annie M. Archbold, who thereafter became by marriage Annie M. Dustin.

Annie M. Dustin (hereinafter sometimes referred to as "decedent " or " second decedent ") died a resident of Georgia on March 22, 1921, that is, within five years subsequent to the death of her husband, the aforementioned John D. Archbold.

Under the will of John D. Archbold, one-third of his estate passed to his widow, the decedent in this proceeding, and a Federal estate tax was paid thereon under the statute then in force. Included among the property received by the second decedent were various securities which were taxed in the estate of the prior decedent. The prior-taxed property which is included in the estate of this decedent is admitted by the Commissioner to have had a value of $3,153,290.89 at the date of the second decedent's death, but this amount was reduced by the Commissioner to $2,811,817.27 in his determination for the following reason set forth in the deficiency notice:

There was deducted from this schedule in the Bureau's tentative audit the sum of $501,690.14, representing funeral expenses, executor's commission, attorney's fee, miscellaneous administration expenses, debts of decedent and charitable, public and similar bequests, the estate having failed to show that such charges had not been paid from funds received from the prior estate. It appears, however, that the estate paid these total charges out of commingled funds of the present and prior estates. However, as the estate had deposited in this fund a total of $341,473.65 derived from the sale of property taxed in the prior estate which is less than the total of the allowable deductions, the sum of $341,473.65 instead of 501,690.14 should be deducted from the total of Schedule K for the reason that the funds having been commingled the money derived from the sale of property of the prior estate loses its identity and it cannot be said that the particular money derived from the sale of property previously taxed was not used in the payment of these charges. Accordingly, the estate is entitled to a deduction of $160,216.49, this being the difference between $501,690.14 and $341,473.65, or the amount which is identified as having been paid from funds of the present estate.

After the death of the second decedent, her executor opened and maintained one bank account for the estate in which was deposited all funds, whether representing principal or income and from whatever source derived. The executors sold certain securities which the

second decedent received from the prior decedent upon which a Federal estate tax had been paid in the estate of the prior decedent, and the amount derived from these sales, $351,473.65, was deposited in the aforementioned bank account without being earmarked or segregated in any way from cash received from other sources. In addition, deposits were made in this account from sources other than the sale of prior-taxed property in the amount of $880,662.46. Disbursements were made by the executor from this account in the amount of $501,690.14, divided as follows: funeral expenses, $2,141.95; executor's fees, $75,000; attorney's fees, $43,108.66; miscellaneous administration expenses, $39,984.95; debts of decedent, $211,454.58; and charitable bequests, $130,000. This bank account at all times contained funds, exclusive of the deposits from the sale of prior-taxed property, sufficient to pay the items enumerated above, but the checks which were drawn for the payment of the same did not specify that the payments were being made from any particular money. The Commissioner's deficiency notice allowed the foregoing expenses as deductions from the gross estate, but reduced the total prior-taxed property of the decedent by the difference between the total of the foregoing expenses, $501,690.14, and receipts from the sale of prior-taxed property which were deposited in this account, $341,473.65 (both parties concede that this amount should have been $351,473.65).

On September 27, 1920, decedent sold for $58,485, through Jessup and Lamont, brokers, 1,000 shares of Chicago, Milwaukee & St. Paul stock acquired from the first decedent upon which a Federal estate tax had been paid at a value of $125,250. The proceeds of this sale were reinvested in $20,000 First Liberty Loan bonds, which cost $18,524.17, and 365 shares of Southern Pacific Railway Co. stock, which cost $36,608.50. The values of these securities on the date of the death of the decedent were $18,082 and $27,110, respectively.

During the period from November 10, 1919, to December 2, 1919, the decedent sold through Jessup and Lamont, brokers, securities as follows which had been taxed in the estate of the prior decedent for Federal estate-tax purposes at a valuation of $377,110.37:

| 1919 | | |
|---|---|---|
| Nov. 10. | 300 shares International | $7,452.00 |
| | 34 shares Nickel Common | 840.29 |
| | 334 | |
| Nov. 14. | 300 shares St. Paul Common | 13,705.50 |
| 19. | 200     do | 8,412.00 |
| | 500 | |
| Nov. 18. | 400 shares Anaconda | 26,469.50 |
| | 433 shares Copper Co | 27,713.25 |
| | 833 | |

1919

| | | | |
|---|---|---|---|
| Nov. 18. | 300 shares Brooklyn Union Gas | $18, 368. 00 |
| Dec. 2. | 200 | do | 10, 162. 00 |
| Nov. 24. | 100 | do | 5, 881. 00 |
| Nov. 25. | 200 | do | 11, 362. 00 |
| Dec. 2. | 200 | do | 10, 024. 50 |
| | 1, 000 | | |
| Nov. 20. | 333 shares Inspiration Copper Co | 18, 512. 26 |
| Nov. 20. | 1, 055 shares Midvale Steel | 53, 887. 09 |
| | Total | 212, 789. 39 |

During the same period the following sales were made through the same brokers of securities on which a Federal estate tax had not been paid:

1919

| | | |
|---|---|---|
| Nov. 10. | 300 shares International | $7, 814. 50 |
| | 300 shares Nickel Common | 7, 452. 00 |
| | 600 | |
| Nov. 20. | 166 shares Midvale Steel | 8, 478. 95 |
| Nov. 20. | 333 shares Inspiration Copper Co | 18, 512. 26 |
| | Interest | 4. 22 |
| | Total | 42, 261. 93 |
| | Total from both groups of securities | 255, 051. 32 |

A " running " account was kept with the brokers during this period; the sums realized from the sale of both groups of securities were not " earmarked " by the brokers as to their source, but were credited to the decedent in a single account. The following purchases were charged against this account as made and the account was closed on December 11, 1919, by mailing the decedent a check for her credit balance as indicated in the following statement:

| 1919 | | | | Cost |
|---|---|---|---|---|
| Nov. 18. | $20, 000 | United States Government 3½% | $20, 076. 40 |
| Nov. 20. | 50, 000 | do | 50, 055. 00 |
| Nov. 21. | 20, 000 | do | 20, 026. 00 |
| Nov. 24. | 123, 000 | do | 123, 159. 90 |
| Nov. 25. | 5, 000 | do | 5, 005. 50 |
| Nov. 25. | 12, 000 | do | 12, 015. 60 |
| Dec. 3. | 20, 000 | do | 19, 946. 00 |
| | 250, 000 | | |
| | Interest on bonds when purchased | 3, 880. 98 |
| | Transfer taxes | 115. 82 |
| | Check for balance | 770. 12 |
| | | 255, 051. 32 |

The Commissioner disallowed as a deduction on account of previously taxed property, the value, or any part of the securities set

out above.   United States Government First Liberty Loan bonds of $212,500 face value which were purchased between November 18 and December 3, 1919, had a value on the date of decedent's death of $192,340.31.

The decedent, prior to her death, received stock dividends with respect to shares of stock identified as received by her from the estate of the prior decedent, which shares were included in the estate of the said prior decedent and an estate tax paid thereon.   The shares of stock which were issued as a stock dividend, the value of the original stock in the estate of the prior decedent on which a Federal estate tax was paid, value of original and stock dividend shares at date of death of the second decedent, value allowed by the Commissioner in the estate of the second decedent as prior-taxed property, and the additional amount claimed by petitioner in this proceeding as prior-taxed property are shown by the following tabulation:

| Shares | Value in estate of prior decedent | Value in estate of second decedent | Value allowed by Commissioner in estate of second decedent as prior-taxed property | Additional amount claimed as prior-taxed property |
|---|---|---|---|---|
| 60 Continental Oil Co. at $555. 120 Stock dividend 200% May, 1920. ── 180 | $33,300 | $20,520 (180 shares at $114). | $6,840 (60 shares at $114). | $13,680.00 |
| 333 South Penn Oil Co. at $572. 200 Stock dividend 60% Feb., 1917. ── 533 | 190,476 | $118,592.50 (533 shares at $222.50). | $74,092.50 (333 shares at $222.50). | 44,500.00 |
| 619 Standard Oil Co. Indiana at $830. 2,476 Par value reduced from $100 to $25. 3,714 Stock dividend 150% Dec., 1920. ── 6,190 | 513,770 | $433,300 (6,190 shares at $70). | $173,320 (2,476 shares at $70). | 259,980.00 |
| 60 Standard Oil Co., Kentucky at $700. 60 Stock dividend 100% May, 1918. ── 120 | 42,000 | $48,600 (120 shares at $405). | $24,300 (60 shares at $405). | [1] 17,700.00 |
| 400 General Electric Co. at 179¼. 8 Stock dividend 2%, 1917. 9 Stock dividend 2%, 1918. ── 417 | 71,700 | $56,712 (417 shares at $136). | $54,400 (400 shares at $136). | 2,312.00 |
| 173 Pyle National Co. at $190. 8 Stock dividend Mar. 1920. 543 Stock dividend Mar. 1920, in common stock; the company converted the original stock into preferred stock and issued new common stock as stock dividend. ── 724 | 32,870 | $49,322.50 (181 shares at $92.50; 543 shares at $60). | $16,002.50 (173 shares at $92.50). | [2] 16,867.50 |
| Total | | | | 355,039.50 |

[1] $42,000 less $24,300.          [2] $32,870 less $16,002.50.

Among the assets received by the second decedent from the prior decedent on which a Federal estate tax had been paid were shares of stock in certain corporations which corporations, between the

deaths of the prior and second decedents, increased their stock and gave to the then stockholders the right to subscribe for certain of the additional stock at a price which was less than the market price of the stock at the time. The stock on account of which the stock subscription rights were exercised, the additional stock subscribed for, the value of both classes of stock at the death of the prior decedent and the death of the second decedent, the deduction allowed the second decedent as prior-taxed property, and the manner in which an additional deduction claimed on account thereof was arrived at by the petitioner, are shown by the following tabulation:

| | Value at death of prior decedent | Value at death of second decedent | Additional exemption claimed |
|---|---|---|---|
| **NATIONAL CITY BANK OF NEW YORK** | | | |
| 166 shares at $532 | $88,312.00 at $327 | $54,282.00 | |
| 100 shares subscription at $125 | 12,500.00 at $327 | 32,700.00 | |
| | 100,812.00 | 86,982.00 | |
| | | 12,500.00 | |
| | Less subscription | 74,482.00 | |
| | Exemption allowed second decedent | 54,282.00 | |
| **NATIONAL FUEL GAS CO.** | | | $20,200.00 |
| 1,333 shares at $230 | $306,590.00 at $122.50 | 163,292.50 | |
| 333 shares subscription at $100 (May, 1918). | 33,300.00 at $122.50 | 40,792.50 | |
| | 339,890.00 | 204,085.00 | |
| | Less subscription | 33,300.00 | |
| | | 170,785.00 | |
| | Exemption allowed second decedent | 163,292.50 | |
| 1,666 shares at $57.25 | $95,378.50 at $49 | 81,634.00 | 7,492.50 |
| 1,034 shares subscription at $25 (May, 1918). | 25,850.00 at $49 | 50,666.00 | |
| | 121,228.50 | 132,300.00 | |
| | Less subscription | 25,850.00 | |
| | | 106,450.00 | |
| | Exemption allowed second decedent | 81,634.00 | |
| | Additional exemption claimed: Difference between and | 95,378.50 | |
| **CONTINENTAL OIL CO.** | | 81,634.00 | 13,744.50 |
| 60 shares at $555 | $33,300.00 at $114 | 6,840.00 | |
| 20 shares subscription at $100 (May, 1920). | 2,000.00 at $114 | 2,280.00 | |
| | 35,300.00 | 9,120.00 | |
| | Less subscription | 2,000.00 | |
| | | 7,120.00 | |
| | Exemption allowed second decedent | 6,840.00 | |
| **GENERAL ELECTRIC CO.** | | | 280.00 |
| 400 shares at $179.25 | $71,700.00 at $136 | 54,400.00 | |
| 40 shares subscription at $100 | 4,000.00 at $136 | 5,440.00 | |
| | 75,700.00 | 59,840.00 | |
| | Less subscription | 4,000.00 | |
| | | 55,840.00 | |
| | Exemption allowed second decedent | 54,400.00 | |
| | | | 1,440.00 |
| | | | 43,157.00 |

The foregoing subscriptions were made and such additional stock acquired in two ways: (a) In the case of the 333 shares of the National Fuel Gas Co., the 1,034 shares of the Ohio Fuel Supply Co., and the 40 shares of the General Electric Co., the subscription rights were exercised by the prior decedent's personal representatives and payments for the new stock were made by them from funds of his estate. The second decedent, who was devised a one-third interest in her husband's estate, was charged in her accounting with the estate with her proportionate part of the sum thus paid and certificates for her shares of stock thus acquired were issued to her and were owned by her at the time of her death, together with the original shares as to which such subscription rights appertained. (b) In the case of the 100 shares of the National City Bank and the 20 shares of the Continental Oil Co., the second decedent made her subscriptions and paid for the new shares thus issued to her direct to the issuing corporations, using her own funds therefor.

### OPINION.

LITTLETON: The following contentions are advanced by the executor:

1. That he should be allowed as a deduction in establishing the net taxable estate the sum of $501,690.14 expended for items deductible under section 403 (a) (1) and (3) of the Revenue Act of 1921 and that no part of said sum was paid with the proceeds of the sale of prior-taxed property as claimed by the Commissioner.

2. That securities aggregating $237,432.31 in value at the date of the decedent's death, and bought with the proceeds of the sale of prior-taxed property, should be deducted as acquired in exchange for prior-taxed property in establishing the net taxable estate, pursuant to the provisions of section 403 (a) (2) of the Revenue Act of 1921.

3. That he is entitled to deduct in establishing the net taxable estate herein, not only the value of shares of stock received by the decedent herein from the prior decedent, and upon which stock the estate of the prior decedent had paid a Federal estate tax, but, also, and as a part of such prior-taxed property, stock dividends received by the decedent on such stock.

4. That since the decedent or the prior decedent's estate exercised the right to subscribe to certain shares of stock accorded by corporations which had issued shares owned by the prior decedent, and upon which original stock his estate had paid a tax, the petitioner is entitled to deduct as prior-taxed property and as a part of the prior-taxed property the value of shares so acquired less the subscription price.

The first point arises under section 403 (a) (1), (2), and (3) which reads as follows:

That for the purpose of the tax the value of the net estate shall be determined—

(a) In the case of a resident, by deducting from the value of the gross estate—

(1) Such amounts for funeral expenses, administration expenses, claims against the estate, unpaid mortgages upon, or any indebtedness in respect to, property (except, in the case of a resident decedent, where such property is not situated in the United States), losses incurred during the settlement of the estate arising from fires, storms, shipwreck, or other casualty, or from theft, when such losses are not compensated for by insurance or otherwise, and such amounts reasonably required and actually expended for the support during the settlement of the estate of those dependent upon the decedent, as are allowed by the laws of the jurisdiction, whether within or without the United States, under which the estate is being administered, but not including any income taxes upon income received after the death of the decedent, or any estate, succession, legacy, or inheritance taxes;

(2) An amount equal to the value of any property forming a part of the gross estate situated in the United States of any person who died within five years prior to the death of the decedent where such property can be identified as having been received by the decedent from such prior decedent by gift, bequest, devise, or inheritance, or which can be identified as having been acquired in exchange for property so received: *Provided*, That this deduction shall be allowed only where an estate tax under this or any prior Act of Congress was paid by or on behalf of the estate of such prior decedent, and only in the amount of the value placed by the Commissioner on such property in determining the value of the gross estate of such prior decedent, and only to the extent that the value of such property is included in the decedent's gross estate and not deducted under paragraphs (1) or (3) of subdivision (a) of this section. This deduction shall be made in the case of the estates of all decedents who have died since September 8, 1916;

(3) The amount of all bequests, legacies, devises, or transfers, except bona fide sales for a fair consideration in money or money's worth, in contemplation of or intended to take effect in possession or enjoyment at or after the decedent's death, to or for the use of the United States, any State, Territory, any political subdivision thereof, or the District of Columbia, for exclusively public purposes, or to or for the use of any corporation organized and operated exclusively for religious, charitable, scientific, literary, or educational purposes, including the encouragement of art and the prevention of cruelty to children or animals, no part of the net earnings of which inures to the benefit of any private stockholder or individual, or to a trustee or trustees exclusively for such religious, charitable, scientific, literary, or educational purposes. This deduction shall be made in case of the estates of all decedents who have died since December 31, 1917; and * * *

The prior-taxed property was found by the Commissioner to have a value of $3,153,290.89 in the estate of the second decedent, but this amount was reduced by the Commissioner to $2,811,817.29 on the theory that it had not been shown that the difference was not in effect being allowed once as a deduction under section 403 (a) (1) and (3) and that, therefore, to allow the total of the prior-taxed property as exempt might allow a double deduction.

The facts as to this issue are not in dispute. Decedent's executor maintained one bank account in which were deposited funds received from sources other than the sale of prior-taxed property and also funds received from the sale of prior-taxed property. The former

amount aggregated $880,662.46 over the period in question and the latter, $351,473.65 ($341,473.65 being erroneously used by the Commissioner). The expenditures from this account which are accepted as deductions by the Commissioner under section 403 (a) (1) and (3) amounted to $501,690.14 and the balance in the account from sources other than from prior-taxed property was at all times sufficient to pay these expenses without using funds received from the sale of prior-taxed property. However, funds derived from taxed property, and from other sources, were not segregated in this account and when payments by check were made out of this account there was no way of knowing whether such payments were made from specific funds of prior-taxed property or funds derived from other sources.

The respondent contends if we should allow the deductions allowable under section 403 (a) (1) and (3) which arise by payments out of this account and at the same time allow the total prior-taxed property as a deduction, a double deduction would result to the extent that the deductible expenses were paid by the use of funds received from the sale of prior-taxed property. This would be true if such a situation should exist. For example, if prior-taxed property, which is allowable as a deduction under section 403 (a) (2), is sold by the executors of the second decedent and the funds used to make payments which are deductible under section 403 (a) (1) and (3) the allowance of the value of the prior-taxed property as a deduction and at the same time the allowance of the payments made as deductions would result in a double deduction. See *Appeal of Fidelity Union Trust Co., Executor*, 6 B. T. A. 125.

The problem, however, which we are considering is not the one presented above, but may be said to be analogous to the situation to which the Board referred to in the foregoing opinion in these words:

We are not attempting to decide what the proper deductions under this section would be had it been shown that there was money or property of the decedent available to pay this bequest to charity, exclusive of any money received from the estate of the prior decedent, and exclusive of any property required to satisfy the specific bequests under the will.

It may be that some of the funds which were received from the sale of prior-taxed property were used to make payments which gave rise to the deductions which are being allowed under section 403 (a) (1) and (3), but should this be sufficient to defeat the petitioner's right to the exemption to which he is otherwise entitled when there were always sufficient other funds on hand in the same account from which the payments might have been made? In effect, the controversy arises merely because the petitioner failed to keep two accounts in which the funds were deposited separately. Had this been done, the estate would have been neither richer nor poorer at the end of the

period of administration, and the executor would always have had sufficient funds, exclusive of the funds received from prior-taxed property, to meet the administrative expenses, etc., in question. In other words, the Commissioner's viewpoint renders an absolute identification of the specific money a prerequisite to the allowance under the circumstances of the case at bar.

Upon a consideration of the statute in question and its applicability to the situation here presented, we are not convinced that an identification of the funds is here called for. In *Appeal of Elmer E. Rodenbough, Executor*, 1 B. T. A. 477, the Board said:

This argument leads to the necessity of earmarking the funds, else there can be no way of showing they were *identical*. We do not think the statute goes to the length of such a requirement.

We regard the method employed and interpretation given to the statute by the Commissioner as too technical under the circumstances. We are not dealing with adverse claimants to a fund such as was the case in *Clayton's* case, 1 Mer. 572, where the theory that the first money in was the first drawn out was applied. Here we are attempting to apply a taxing statute which allows certain classes of expenditures as deductions to an estate before subjecting the transfer of the net estate to tax and at the same time prevents any part of the same estate from being subjected to the same kind of tax within a five-year period. We are of the opinion that either one, or part of both of the foregoing objects are being defeated by the strict and unnecessarily technical interpretation of the statute by the Commissioner, and that a more reasonable interpretation should be given in order to carry out the intent of Congress that administrative expenses should be allowed as deductions and that prior-taxed property should not again be included in the net estate of the second decedent. It is only by resolving doubts against the estate that the deduction in question is excluded. Taxing statutes should be interpreted from a reasonable viewpoint. *Gould* v. *Gould*, 245 U. S. 151. In the case of *United States* v. *Davison*, 1 Fed. (2d) 465, later affirmed in 9 Fed. (2d) 1022, it was held that:

In determining whether a particular transaction is subject to tax, the decisions hold that the substance, and not the form, is to be regarded. In *United States* v. *Phellis*, 257 U. S. 156, 42 Sup. Ct. 63, 66 L. Ed. 180, the Supreme Court said: "We recognize the importance of regarding matters of substance and disregarding forms in applying the provisions of the Sixteenth Amendment and income tax laws enacted thereunder. In a number of cases besides those just cited we have under varying conditions followed the rule. *Lynch* v. *Turrish*, 247 U. S. 221; *Southern Pacific Co.* v. *Lowe*, 247 U. S. 330; *Gulf Oil Corporation* v. *Lewellyn*, 248 U. S. 71." This has been the rule from the time of the decision in *Bailey* v. *Railroad*, 106 U. S. 109, 1 Sup. Ct. 62, 27 L. Ed. 81, to the present time.

Accordingly, we sustain the contention of the petitioner for a deduction of prior-taxed property in the amount of $3,153,290.89 and for deductions on account of administrative expenses, debts, charitable bequests, etc., in the amount of $501,690.14.

The second point involves the question of whether the value of property purchased by decedent through the investment of the proceeds of the sale of securities acquired by decedent from a prior decedent who died within five years and on whose estate an estate tax was paid may be deducted from the gross estate under section 403 (a) (2), Revenue Act of 1921. The same question was before the Board in the *Appeal of Elmer E. Rodenbough, Executor, supra*, and there decided in favor of an allowance of such property as a deduction. In the *Rodenbough* case we were concerned with a corresponding provision of the statute under the Revenue Act of 1918, but the reasoning there advanced would be equally applicable under the Revenue Act of 1921.

This question was before the United States District Court for the Western District of New York in the case of *George Cary* v. *United States*, 22 Fed. (2d) 298, and, in its opinion rendered August 11, 1927, the court said:

A rehearing was subsequently granted, it being urged by the Government that another question was involved, which had not been presented or passed upon, viz: whether any of the securities owned by plaintiff's intestate at the time of her death, can, under sec. 403(a) (2) of the Revenue Act of 1921, be identified as securities received from her father by bequest, or whether they were acquired by her by exchange for property so received and upon which an estate tax had been paid by the testator, her father, within five years before his death. The Government claims that, since it is shown that the securities, in the main, were acquired by plaintiff's intestate, in her lifetime, through purchase with securities or money received by her in lieu of the bequest, and in some instances were sold by her, the proceeds being used for purchase of other securities, they can not, as stated in the Act, "be identified as having been acquired in exchange for property so received," and, hence, that they were subject to the tax imposed.

A different conclusion, however, has been reached. The undisputed evidence fully shows that the securities bought by her, after the payment of the bequest, were acquired in exchange for property, securities, or money paid to her by the executors of her father's will. The findings of fact and conclusions of law approved by me make it unnecessary to set forth the details of the various purchases and sales. The law is well settled that in matters of taxation the subject of the transactions must be considered, that substance and not form is to be regarded, and, accordingly, the Revenue Act of 1921 must be given a reasonable construction. *U. S.* v. *Phellis*, 257 U. S. 156; *U. S.* v. *Davison*, 1 Fed. (2d) 465. Its purpose manifestly was to prevent collecting a double tax on property of deceased persons within five years. That such was the intent of Congress is fairly shown by the report of the Ways and Means Committee on the revenue bill of 1918, which had a similar exemption clause, together with the ensuing discussions.

The crucial point in this case turns upon whether the wording of the statute " as having been acquired in exchange for property so received" implies a limitation to a single transaction or an exchange of property for property.  I am unable to adopt this view.  It is true that by Art. 44 of the Internal Revenue Regulations, a narrow construction is given the quoted phrase, but I nevertheless think that the Revenue Act in question cannot in reason be accorded such a restricted meaning.  The evidence shows that the property˙ bequeathed or devised, and paid by the executors in satisfaction of the bequest, was shortly thereafter invested by the legatee, during her lifetime, in other property, stocks and bonds.  I am of opinion that these later securities can fairly be traced and identified to the securities and money acquired under the will, and that it constituted substantially an exchange thereof.  True enough, the word " exchange " ordinarily implies the giving of one thing for another, which, ordinarily is regarded as an equivalent, but the statute in its use of the word " exchange " must be considered and given effect with the terms of the provision which are consistent with each other.  Such was the ruling in U. S. v. 99 Diamonds, 139 Fed. 961.  And in the Rodenbough appeal decided by the United States Board of Tax Appeals, Vol. 1, Board of Tax Appeals, 477, wherein a similar question arose, it was substantially held that if the property of a deceased was identified or traced to purchases of other properties, it was not subject to taxation under the Revenue Act.  In that case, as here, the proceeds of the property bequeathed was invested in other securities and the Government contended that, under the provisions of the Act, only one exchange was presumable, and a reinvestment of securities or of moneys received under the will of a testator was not a single exchange.

There is nothing contained in the Act, however, as heretofore indicated, to form a reasonable basis for holding that merely a single exchange was intended.  Upon this point it was ruled in the Rodenbough case by the Board of Tax Appeals that the intendment of Congress was not to limit the meaning of the word " exchange " to a single transaction, but " That a reinvestment of money realized from property received from a prior decedent was an exchange within the terms of the Act".  This ruling, the Government insists, was obviously erroneous in that it ignored the real meaning of the word " exchange " and confused purchases, sales and investments with an exchange. However, I have carefully considered the opinion of the Board, and I am unconvinced of its asserted error.

On August 15, 1927, the U. S. District Court for the Eastern District of Pennsylvania in *United States* v. *Rodenbough*, 21 Fed. (2d) 781, held that the conclusions reached by the Board in *Appeal of Elmer E. Rodenbough*, 1 B. T. A. 477, that property acquired by the decedent with the proceeds from the disposition of property which had been included in the estate of the prior decedent and used as the measure of the estate tax paid by such prior estate should be excluded from the net estate of the second decedent was erroneous, and held that the word " exchange " in the phrase " or which can be identified as having been acquired by the decedent in exchange for property so received " (from the prior decedent) should be strictly construed.

We have carefully considered the opinion of the learned court in *United States* v. *Rodenbough*, supra, but notwithstanding our great respect for and deference to the opinion of the Court, we are unable

to agree with the conclusion reached and we still adhere to our construction of the statute in *Elmer E. Rodenbough*, 1 B. T. A. 477, and in *Honoro Gibson Pelton, Executrix*, v. *Commissioner*, 7 B. T. A. 1144, decided August 22, 1927.

Section 403 (a) (2) of the Revenue Act of 1921 provides—

That for the purpose of the tax the value of the net estate shall be determined—

(a) In the case of a resident, by deducting from the value of the gross estate—

\*          \*          \*          \*          \*          \*          \*

(2) An amount equal to the value of any property forming a part of the gross estate situated in the United States of any person who died within five years prior to the death of the decedent where such property can be identified as having been received by the decedent from such prior decedent by gift, bequest, devise, or inheritance, or which can be identified as having been acquired in exchange for property so received: *Provided*, That this deduction shall be allowed only where an estate tax under this or any prior Act of Congress was paid by or on behalf of the estate of such prior decedent, and only in the amount of the value placed by the Commissioner on such property in determining the value of the gross estate of such prior decedent, and only to the extent that the value of such property is included in the decedent's gross estate and not deducted under paragraphs (1) or (3) of subdivision (a) of this section. This deduction shall be made in case of the estates of all decedents who have died since September 8, 1916.

We think when the nature of the estate tax and the entire provisions of Section 403, of the Revenue Act of 1921 are considered, it is evident that the underlying intent of Congress was that an amount equal to the value placed upon the property of a decedent for the purpose of the estate tax should not again be used as the measure of the tax within five years, and that the word " exchange " used in the phrase " or which can be identified as having been acquired in exchange for property " received from the prior decedent, was not intended to be given a technical interpretation.

The property in issue under this point was stipulated by the parties as having a value in the estate of the second decedent as follows:

| | |
|---|---:|
| $20,000 first Liberty Loan bonds | $18,082.00 |
| 365 shares Southern Pacific Co | 27,010.00 |
| $212,500 first Liberty Loan bonds | 192,340.31 |
| Total | 237,432.31 |

Since these amounts are less than the amounts at which the property sold was valued in the estate of the prior decedent, deductions should be allowed in the foregoing amounts.

The third question is, Shall stock dividends on stock, which is properly includable as a deduction from the gross estate as prior taxed property under section 403 (a) (2) and where the dividends were declared within the five-year period mentioned under the foregoing section, be considered as prior-taxed property which may be

deducted from the gross estate? In other words, is the value of the original stock which was received from the prior decedent the value which the second decedent is entitled to deduct or is it the value of the original stock plus the value of the stock dividends declared thereon, subject always to the limitations under section 403 (a) (2)?

A review of court decisions involving stock dividends and a consideration of the inherent nature of such dividends lead us to the conclusion that stock dividends are as much a part of the prior-taxed property as the original stock on which declared and, therefore, its value should be considered, along with the value of the original stock, in determining the deduction allowable for prior-taxed property. From the very nature of such a dividend the foregoing answer follows. The receipt of stock dividends by the decedent on stock which she held did not mean any increase in the property which she formerly held; it means a division of the property which she already held and whose value in her estate was entitled to be deducted as prior-taxed property. For example, if A holds 500 shares of stock in corporation B which has a capital stock of 1,000 shares, and a 50 per cent stock dividend is declared, thereby giving A 750 shares and increasing the capital stock to 1,500 shares, A's relative holdings in corporation B are not thereby increased. Both before and after the receipt of the stock dividend, A would be entitled to the same amount of cash dividends when declared and would share to the same extent in dividends upon final liquidation of the company. As the court said in *Gibbons* v. *Mahon*, 136 U. S. 549:

A stock dividend really takes nothing from the property of the corporation, and adds nothing to the interests of the shareholders. Its property is not diminished, and their interests are not increased.

After such a dividend, as before, the corporation has the title in all the corporate property; the aggregate interests therein of all the shareholders are represented by the whole number of shares; and the proportional interest of each shareholder remains the same.

The only change is in the evidence which represents that interest, the new shares and the original shares together representing the same proportional interest that the original shares represented before the issue of new ones.

And likewise, *Eisner* v. *Macomber*, 252 U. S. 189, wherein this statement is made:

The essential and controlling fact is that the stockholder has received nothing out of the company's assets for his separate use and benefit; on the contrary, every dollar of his original investment, together with whatever accretions and accumulations have resulted from employment of his money and that of the other stockholders in the business of the company, still remains the property of the company, and subject to business risks which may result in wiping out the entire investment.

Having regard to the very truth of the matter, to substance and not to form, he has received nothing that answers the definition of income within the meaning of the Sixteenth Amendment.

Also see *McDonald* v. *Maxwell*, 274 U. S. 91. This involved a case where the executors had filed an account in which they had claimed commissions on the receipt by them of stock dividends. In denying the claim of the executors that these stock dividends represented an increase in the principal of the estate and that accordingly they were entitled to commissions, the court said:

> After their issuance, which necessarily "diluted" the value of the original shares, the dividend shares and the original shares together represented the same proportional interest in the corporate properties that had previously been represented by the original shares alone; no more and no less. Clearly, therefore, the dividend shares themselves represented no increase in the value of the estate; and they could not properly be taken as the basis for the allowance of a commission to the executors on the theory that their receipt, in and of itself, constituted an increase in its capital.

In the shares of stock here in issue a deduction is not being asked of a value of the original shares plus the shares received as a stock dividend in an amount greater than the value at which the transfer of the original shares was taxed in the estate of the prior decedent, and in four out of six classes of the stock the deduction claimed is less than the value allowed in the estate of the prior decedent. Where no stock dividend has been declared and a deduction is being claimed on account of shares of stock whose transfer was taxed in the estate of a prior decedent, the deduction allowable to the second decedent is an amount which is no greater than the value allowed in the estate of the prior decedent, though the value may be equal to or less than that previously allowed in the estate of the prior decedent. Since the shares of stock held at the death of the second decedent (original shares plus shares received as a stock dividend) represent the same proportional interest that the original shares represented before the issue of the new ones, we fail to see why the deduction allowable to the second decedent is not to be based upon a valuation of the original shares plus the value of the shares received as a stock dividend on these shares in the same manner and with same limitations as if we were dealing with the original shares where no stock dividend has been declared. The contention of the petitioner for an additional deduction on this account of $355,039.50 is, therefore, sustained.

The final contention advanced by the petitioner is that shares of stock owned by the prior decedent, and with respect to which his estate had paid a Federal estate tax, were represented in the second decedent's estate by the value of the shares owned originally by the prior decedent and inherited by the second decedent, plus the value of the shares acquired through the exercise of subscription rights,

and less the amount paid to acquire the additional shares. On the petitioner's theory, the amount claimed would not exceed the value of the shares owned by the prior decedent at the time of his death or the value of those shares, plus the additional shares acquired by subscription, at the time of the death of the decedent herein after subtracting in the latter instance the subscription price.

In advancing the foregoing contention, the petitioner relies principally on *Miles* v. *Safe Deposit & Trust Co.*, 259 U. S. 247, wherein the court stated that "The stockholder's right to take his part of the new shares therefore—assuming their intrinsic value to have exceeded the issuing price—was essentially analogous to a stock dividend" and argues that the result contended for there necessarily followed from the argument on the preceding point as to stock dividends. The case referred to involved a determination of the gain derived from the sale of certain subscription rights, and the court held that the entire amount received from such a sale was not to be considered gain, but that there must be taken into consideration both the cost of the original shares and the price at which the additional shares were offered to the stockholders in a computation which would produce the cost of that which was sold. The method followed is essentially that followed by the Commissioner in the determination of gain or loss derived from the sale of stock received as a dividend. (Article 1547, Regulations 45 (1920 Edition).)

In the opinion of the Board the problem presented in the instant case is essentially different from the foregoing case. Here we are seeking to determine the value of property which may be *identified* as having been received from a prior decedent within five years prior to the death of the second decedent and where a Federal estate tax has been paid thereon. Upon the death of the prior decedent, the decedent received certain shares of stock which were taxed in the estate of such prior decedent. Beyond the fact that the right to subscribe to the new stock is an equity that inheres in stock ownership (*Miles* v. *Safe Deposit & Trust Co., supra*), the subscription rights had not yet come into existence upon the death of the prior decedent. An act was necessary on the part of the second decedent in order to gain any benefit from the option offered to subscribe for the new stock. This was accomplished in the case at bar by subscribing for the new stock when offered, using for the payment of the subscription price either the personal funds of second decedent or funds of the estate of the prior decedent which it has not been shown were taxed in the estate of the prior decedent. To say that the advantage derived from the subscription to such stock is property which may be identified as having been received from the estate of the prior dece-

dent on which a Federal estate tax was paid, is going further than we feel an interpretation of the statute warrants. The contention of the petitioner on this point is, therefore, denied.

Reviewed by the Board.

*Judgment will be entered on 20 days' notice, under Rule 50.*

TRAMMELL and GREEN dissent.